STATE ex rel INGLES, Plaintiff, v. CIRCUIT COURT OF SPINK COUNTY, Defendant.

(258 N. W. 278.)

(File No. 7787. Opinion filed December 29, 1934.)

*W. F. Coopersmith,* of Redfield, and *Fellows, Fellows & Tinan,* of Mitchell, for Plaintiff.

*W. F. Bruell* and *A. F. Schleher,* both of Redfield, for Defendant.

CAMPBELL, J. Spink county constitutes the Thirty-First representative district of this state and is entitled to three members in the House of Representatives of the State Legislature. At the regular November, 1934, general election six persons sought election to represent said Thirty-First district in the Twenty-Fourth Legislature, being the relator T. J. Ingles, Paul W. Opsahl, Carl W. Wall, H. H. Motley, William J. Brugger, and John Steffes. In due course after the election the vote in said county was canvassed (section 7290, Rev. Code 1919) and the abstract of the vote with reference to the office of representative from the Thirty-First representative district as made and returned by the canvassing board on November 15, 1934, disclosed that the votes cast for the candidates for such office were respectively as follows: Opsahl, 3,370; Wall, 2,834; Motley, 2,790; Ingles, 2,790; Brugger, 2,650; Steffes, 2,570. The canvassing board thus returned and determined that

Opsahl and Wall, who had received the highest number of votes, had each been duly elected to the office of representative from the Thirty-First district (and certificates of election were subsequently issued to them in accordance with said determination), and that as to the third place, Motley and relator Ingles having received an equal number of votes, there was not yet any election. Thereafter and on November 19, 1934, Hon. Frank R. Fisher, one of the judges of the circuit court for Spink county, purporting to act pursuant to section 7312, Rev. Code 1919, appointed a recounting board of five members and directed said board to recount all the ballots cast for Motley and Ingles for the office of representative and to certify the result to him. Such board proceeded accordingly, and the result of such recount was again a tie, the board finding that Motley received 2,755 votes for said office, and that Ingles likewise received 2,755 votes, which fact the recounting board, on November 26, 1934, duly returned and certified to the appointing judge. Thereupon Judge Fisher, apparently deeming the provisions of section 7317, Rev. Code 1919, applicable to the situation, made and entered an order as follows, duly attested by the clerk under the seal of the court:

"State of South Dakota, County of Spink, ss:

"In Circuit Court, Ninth Judicial Circuit.

"In the Matter of the Recount of the Ballots Cast at the General Election held November 6, 1934, for the office of State Representative between T. J. Ingles and H. H. Motley in order to recount an existing tie vote.

"Order.

"It appearing from the certificate and Report of the Re-Count Board appointed by this Court under an Order dated November 19-1934 to meet and recount all of the ballots cast in Spink County, at the last General Election for T. J. Ingles and H. H. Motley for State Representative, said candidates having received a tie vote as reported by the Official Canvassing Board.

"And said Recount Board having on November 26-1934 made and thereafter filed with the Clerk of this Court a full report of the recount aforesaid and having certified the same to the effect that T. J. Ingles, Democratic Candidate for State Representative received 2,755 votes and H. H. Motley, Republican Candidate for

State Representative, had received 2,755 votes, and said recount having resulted in a tie vote.

"It is therefore ordered, that neither of said two candidates has been elected as a State Representative and that a Special Election is therefore necessary to fill said vacancy, and determine said tie vote.

"And it is further ordered by this court, that it is the duty of the County Auditor of Spink County, South Dakota, to call such Special Election for the purpose aforesaid, and in the manner provided by law.

"Dated at Redfield, South Dakota, this 30th day of November, 1934.

"By the Court:

"Frank R. Fisher, Judge."

A certified copy of this order was served upon the county auditor of Spink county on December 1, 1934. The county auditor refused to give notice of the calling of a special election or to take any steps whatsoever relating to the matter, whereupon the candidate Motley (who, according to the determination of both the county canvassing board and the recounting board, had received the same number of votes for the office of representative as did the present relator, Ingles) procured from the circuit court of Spink county an alternative writ of mandamus directed to the county auditor of said county requiring him to appear before said court on December 18, 1934, and show cause why a peremptory writ should not issue directing him as county auditor forthwith to give notice to the sheriff of the calling of a special election, etc. Judge Fisher, after issuing the alternative writ of mandamus, called in Judge Perry (one of the judges of the Fifth circuit) to act further in the matter as circumstances might require. The alternative writ coming on for hearing before Judge Perry on December 18, return was made by the defendant county auditor and the matter submitted. Judge Perry, after consideration, granted and issued the peremptory writ, and in obedience thereto notice has been given of a special election to be held in Spink county on December 31 next to vote upon the names of Motley and Ingles as candidates for the single remaining place as representative from the Thirty-First representative district to the Twenty-Fourth Legislature.

Meantime, and immediately after the institution of the mandamus proceeding by the candidate Motley, the present relator Ingles, had undertaken to proceed under sections 7348-7364, Rev. Code 1919, serving written notice of intention to contest upon Opsahl, Wall, Motley, Brugger, and Steffes. At the time of serving notice of intention to contest as aforesaid, Ingles also gave notice of the taking of depositions of sundry witnesses, including the county auditor and clerk of courts, and secured (see section 7287, Rev. Code 1919) from the Honorable Alva E. Taylor, another of the judges of the circuit court in and for Spink county, an order directing the county auditor and clerk of courts to appear with the ballot boxes and keys at the time and place noticed for the taking of their depositions, being December 11, 1934. On December 11, Ingles was proceeding with the taking of his depositions, including the examination of the clerk and auditor and the opening and examination of ballot boxes. Thereupon Motley and Wall, deeming their rights and interests jeopardized and maintaining that the attempted proceedings were not valid or in compliance with statute, separately sought alternative writs of prohibition from the circuit court, which writs were granted, and, after lengthy recitals of fact, addressed themselves to the county auditor, to Ingles, to the clerk of courts, and to the county judge (before whom the depositions were being taken pursuant to notice) in the following language:

"Wherefore, we being willing that justice shall be done in this matter to said H. H. Motley, you, A. L. Kuehn as County Auditor of Spink County, T. J. Ingles as Contestant, P. L. Alexander as County Judge, and Lewis J. Howard as Clerk of Courts, are hereby directed and ordered to forthwith cease and refrain from further proceedings in the taking of testimony in said contest matter and cease breaking open the ballot boxes and removing any of said ballots therefrom until further order of the court.

"It is further ordered that you, and each of you, appear and show cause before this Court, at the Court Room of said court at the court house in the City of Redfield, Spink County, South Dakota, on the 22nd day of December, 1934, at one-thirty in the afternoon of said day, or as soon thereafter as counsel may be heard, why said writ should not be made peremptory, and make due return hereof to this Court, and this writ and the affidavit of

H. H. Motley hereto attached, upon which the writ is based, shall be served upon said defendants and each of them at least ten days before the day of said hearing."

After the issuance of these alternative writs of prohibition, Judge Fisher again called in Judge Perry of the Fifth circuit, and on the return day, December 22, Judge Perry came to Spink county for the purpose of hearing the return and determining the matter.

Meantime Ingles, being of the view that the circuit court of Spink county had exceeded its jurisdiction by issuing its writs of prohibition interfering with the taking of his depositions and his examination of ballots in connection with his intended contest, had applied to this court for an alternative writ of prohibition (returnable here on December 27, 1934, when cause might be shown why a peremptory writ should not issue), prohibiting the circuit court of Spink county, in turn, from proceeding further with the granting of the writs of prohibition sought in that court by the applicants Motley and Wall. Coming to Redfield on the return day, December 22, to consider the writs of prohibition pending in the circuit court, Judge Perry was served with the alternative writ of prohibition issued out of this court, whereupon he adjourned further proceedings in the circuit court to January 5. On December 27, the return day of the writ directed by this court to the circuit court of Spink county, Judges Fisher and Perry by counsel appeared specially before us and made a motion to quash. After oral argument upon the motion to quash (but, by consent of opposing counsel and express permission of this court, reserving all rights under such special appearance and in no manner waiving the same) for the convenience of this court and of all parties, an answer and return to the alternative writ of prohibition was immediately filed and likewise orally argued upon the merits, and the matter is now for our determination both upon the motion to quash and the return, memoranda briefs having been subsequently filed.

■ Relator submits that all questions in any wise connected with a contest or attempted contest for legislative office are to be determined exclusively by the Legislature, and that the circuit court of Spink county has exceeded its jurisdiction by attempting in any fashion to interfere with relator's intended contest or his preliminary preparations therefore. Defendant, on the other hand, maintains that, under existent facts and at this time, a judicial

question is presented, and that the circuit court of Spink county has not exceeded its jurisdiction and consequently should not be restrained or prohibited by this court in the premises.

Section 9 of article 3 of the Constitution of this state reads in part as follows: "Each house shall be the judge of the election returns and qualifications of its own members." The power of each house of the Legislature to determine the election and qualification of its own members is therefore plenary. When the Twenty-Fourth Legislature shall assemble at the capitol on January 8 next, any person whomsoever may appear before either house and assert his right and title to any seat therein. It may be admitted, so far as the present issues are concerned, that, if such a claim is so asserted, then whether or not the house will listen at all to the claimant, what proof it will require of him, what investigation it will make of his claim, and what decision it will finally come to concerning such claim, are matters entirely and exclusively for that house to determine. If such a claim is presented, and the house sees fit to investigate the matter, no one can doubt the power of the house to summon and interrogate witnesses, to order ballots and ballot boxes relating to the election to the contested seat brought in for examination, and to open and examine the same, or send a committee out for that purpose. That, however, is not the situation which is here before us. At the present time, the relator, Ingles, as an individual, is endeavoring to assemble some information, presumably for the purpose of presenting it to the House of Representatives in support of a claim which he expects hereafter to make before said house with reference to a seat therein.

It will be conceded that the ordinary citizen, who may be curious as to whether the result of an election has been properly determined and declared by the officers charged with that duty, is not entitled to open ballot boxes and examine the contents or to have the aid of the process of subpoena in conducting an investigation to satisfy his curiosity; and a citizen who proposes to contest an election is not, merely by reason of such intention on his part, in any different or better position in that regard unless some statute affirmatively so provides. Consequently any individual seeking to exercise such special privileges must bring himself within the terms of a statute so permitting.

The Territorial Legislature of 1877 enacted such a statute (chapter 47, Pol. Code Dak. 1877) which has come down to us without substantial change (sections 7348-7364, Rev. Code 1919) designed to furnish certain aid to the preliminary investigations of a person who intends thereafter to contest the election of any member of either branch of the Legislature, and it is under that statute that relator, Ingles, is purporting and attempting to act at the present time. The right of relator, Ingles, to contest the seat of any member of the Legislature when the time to do so arrives, and the determination of his contest claim if and when he makes one, will doubtless present questions exclusively for legislative determination. His right at the present time to enjoy certain special rights and privileges extended by a statute to certain persons depends on whether or not he has brought himself within the terms of that statute, and that is exclusively a judicial question.

■ ■ The statute in question provides in part as follows (section 7348, Rev. Code 1919) : "Whenever any person intends to contest an election of any member of either branch of the legislature of this state he may, within ten days after the result of such election shall have been determined by the officers or board of canvassers authorized by law to determine the same, give notice in writing to the member whose seat he designs to contest, of his intention to contest the same, and in such notice shall specify the grounds upon which he relies in the contest." It is apparent from the remainder of the statute that the privileges which it grants are extended only to persons who bring themselves within the provision of section 7348, above quoted. It is to be noted that the statute is permissive in its language, and there is no attempt to require any person to avail himself of the privileges granted by the statute as a prerequisite to, or an essential or integral part of, contesting the election of any member of either branch of the Legislature. The statute requires any person who desires to enjoy its special privileges to give notice in writing "within ten days after the result of such election shall have been determined" to "the member whose seat he designs to contest." The essential idea of an election contest is that it shall be in behalf of one who has failed of success in the election and against the right of one who has been declared or determined by the proper authority to have

been successful. So far as concerns the candidates Motley, Brugger, and Steffes, no board, body, or authority has declared or determined that they or either of them have been elected to or are entitled to a seat in the next Legislature as representatives from the Thirty-First district or otherwise. No one has declared them or either of them to be possessed of or entitled to any right which relator claims. If and when there is some such declaration in favor of them or one of them, doubtless relator, Ingles, may, within ten days thereafter, serve upon the one in whose favor such declaration is made the notice contemplated by section 7348 and thus bring himself within the terms of the statute, but certainly at the present time the statute has no application to the status of either Motley, Brugger, or Steffes, and relator cannot become entitled to the privileges granted by the statute by serving a notice upon any one of the three of them. Cf. Bowler v. Eisenhood (1891) 1 S. D. 577, 48 N. W. 136, 12 L. R. A. 705. So far as concerns the candidates Opsahl and Wall, they have each been declared duly elected as members of the next Legislature. Doubtless relator, Ingles, is entitled to contest the election of either of them, perhaps both of them, and he could bring himself within the terms of section 7348 by serving the notice therein contemplated upon either of them or perhaps upon both of them. From that point of view, however, his difficulty is that their election was determined by the board of canvassers on November 15, 1934, and relator served no notice upon them until December 6, 1934, whereas the statute requires the service of such notice within ten days after the determination of the result of the election, which, so far as Opsahl and Wall are concerned, would mean within ten days after the return of the county canvassing board. Service of notice upon them came too late therefore to constitute compliance with the statute. Cf. Smith v. Lawrence (1891) 2 S. D. 185 at page 198, 49 N. W. 7; Batterton v. Fuller (1894) 6 S. D. 257, 60 N. W. 1071; Dobson v. Lindekugel (1917) 38 S. D. 606, 162 N. W. 391. It follows therefore that service of notice by relator, Ingles, on Motley, Brugger, Steffes, Wall, and Opsahl, on December 6, did not bring him within the terms of the statute or entitle him to the privileges thereby granted. As to Motley, Brugger, and Steffes, no one has yet declared them entitled to any seat which relator claims. As to Wall and Opsahl, the declaration of their right

was on November 15, and relator failed to serve them within ten days. Relator has not succeeded in qualifying himself as one of those persons to whom the Legislature, by the statute referred to, has extended the special privilege of having in aid of their investigation the process of subpœna, the right to take depositions for subsequent use, the right to have ballot boxes opened and the contents examined, etc. Not having shown himself entitled to such privileges, he cannot be heard to complain that the circuit court exceeded its jurisdiction to his prejudice in prohibiting his attempted exercise thereof, and, since the circuit court has not exceeded its jurisdiction to relator's prejudice, there is no justification for the issuance by this court of any writ of prohibition to said circuit court.

The view above outlined is decisive of the controversy before us, and it becomes unnecessary therefore to consider several very interesting questions raised by defendant's special appearance and motion to quash.

■ There is one other point, however, which was much discussed by counsel upon the oral argument and urged by relator as a controlling factor in the situation, concerning which we think we ought to express our view. Relator contended that, when a recount was ordered because of the tie between Motley and relator, such order should have directed a complete recount of all the votes cast for all six candidates, for the three places; and that, when a special election was ordered because of the persistence of a tie between Motley and relator, such special election should have included all six of the original candidates, and should have been for all three of the places. With the construction which relator thus seeks to place upon sections 7312 and 7317, Rev. Code 1919, we find ourselves unable to agree. The Thirty-First district was entitled to three representatives, and there was no allocation of the six candidates as between the three offices. Under our law the three offices were to be filled by the three out of the six candidates who received the greatest number of votes. The candidates Opsahl and Wall having been found by the canvassing board to have received more votes than any of the other four were declared by said canvassing board to be elected to two of the offices, and this we think was proper and in compliance with the statute. With reference to the third office, Motley and Ingles (each receiving

more votes than either of the two remaining candidates) had each the same number of votes. The circuit judge thereupon ordered a recount as between Motley and Ingles, which again, we think, was a compliance with the statute. According to the then existent figures Opsahl and Wall had been elected to two of the offices. Their election was doubtless open to contest, but no reason appears why they should be called upon to participate in a controversy between Motley and Ingles with reference to election to the third office. Under the circumstances, the only object of the recount was to determine who had in fact received the third highest number of votes, thereby becoming entitled on the face of the returns to the third office. The return of the recounting board continuing to show a tie, we think the proper procedure was the holding of a special election pursuant to section 7317, Rev. Code 1919, at which election the office in question would be the third or thus far unfilled office of representative from the Thirty-First district, and the candidates would be Motley and Ingles, between whom the people of Spink county had failed to make a choice for said office, though by their ballots they had already indicated a preference for both Motley and Ingles rather than either Brugger or Steffes, and also a preference for both Opsahl and Wall rather than either Motley or Ingles. The face of the established returns at this stage of the proceedings indicated that the choice of the greater number of the voters at the general election in Spink county for the three places as representative was first Opsahl, second Wall, and third either Motley or Ingles, the tie vote preventing determination as between the two of them. The only legitimate purpose of the recount and the special election was to determine, on the basis already indicated by the voters, their ultimate choice for the third place. It was not to determine the correctness of the returns by virtue of which Opsahl and Wall were the two highest or Brugger and Steffes the two lowest. Any question regarding either of those matters would have to be taken by contest. We think, therefore, that there was a proper compliance with the law in the ordering of the recount and in the ordering of the special election.

The peremptory writ is denied, and the alternative writ heretofore issued will be quashed.

ROBERTS, P. J., and WARREN and RUDOLPH, JJ., concur.

POLLEY, J., absent and not sitting.