## BOWLER V. EISENHOOD.

1. The term "canvass," as used in Section 1489, Comp. Laws, which provides that "any candidate or person claiming the right to hold an office contested, or any elector of the proper county desiring to contest the validity of an election or the right of any person declared duly elected to an office in said county, shall give notice thereof within twenty days after the canvass of the votes for such election," construed to include the decision of a tie vote by the clerk or auditor, as provided by Section 26, c. 84, Laws 1890.

2. Where the plaintiff and defendant had an equal and the highest number of votes for the office of sheriff, and the county auditor publicly decided by lot that the defendant should be "declared duly elected" sheriff, and made and delivered to the defendant so "declared duly elected," a certificate of his election, *held*, that the time within which a notice of contest by plaintiff could be served commenced to run from the time such defendant was "declared duly elected," and that a notice served within twenty days after such declaration was served in time.

3. *Held, further*, that an order of the circuit court setting aside such notice of contest served within twenty days after defendant was declared duly elected sheriff, should be reversed.

(Syllabus by the court. Submitted Jan. 30, 1891. Opinion filed Feb. 17, 1891.)

Appeal from circuit court, Brown county. Hon. A. W. CAMPBELL, Judge.

Order to show cause upon the plaintiff why a notice of contest of an election should not be set aside because not served within twenty days after the canvass of the votes. Upon the hearing of the order to show cause the lower court made an order setting aside the notice of contest. From that order plaintiff appeals. Reversed. KELLAM, J., dissenting.

The facts so far as material are fully stated in the opinion.

*Crofoot & Stevens*, for appellant.

The twenty days after the canvass of the votes cast at an election allowed by statute for the service of notice of contest do not commence to run until a determination is reached; until some one is declared elected. § 1489, Comp. Laws; People v. VanCleve, 1 Man. 366.

Upon the rules for the proper construction of the statute

in question counsel cited: Story on the Con., § 401; Bacon's Abridg. Stat. 5, 2, 3, 8, 6; Jackson v. Collins, 2 Cow. 95; People v. Ins. Co., 15 Johns. 379; Vorick v. Briggs, 6 Paige 332; Pennington v. Coxe, 2 Cranch 52; United States v. Fisher, Id. 286; Miller v. Salomons, 7 Exch. 546.

*Taubman & Potter* and *F. E. Campbell*, for respondent.

The statute providing for the contest of elections was designed to afford a new and summary remedy. Saunders v. Haynes, 15 Cal. 150. In summary proceedings the law must be strictly construed. Dorsey v. Barry, 24 Cal. 453; Sedgwick Stat. and Con. Law, 319; Ford v. Wright, 13 Minn. 518.

Service of the notice of contest within twenty days after the canvass is essential to the jurisdiction of the court. The statutory requirement as to time is to be regarded as a limitation. Ingrerson v. Marlow, 14 O. St. 568; Borer v. Kollars, 23 Minn. 445: Babcock v. Wagner, 9 Minn. 432; 6 Am. and Eng. Enc. of Law 411; Vigil v. Pratt, 20 Pac. 795; McCrary on Elections, § 392.

When the abstract of votes was made plaintiff had a right of action and could have served his notice of contest. The defendant was a claimant of the office from the time the count was made and the plaintiff could have treated him as a party defendant from that time. § 1489, Comp. Laws; § 26, Chap. 89, Laws of 1890.

CORSON, P. J. At the general election held in Brown county on November 4, 1890, three persons were voted for for the office of sheriff of that county, two of whom were the plaintiff and defendant herein. On November 10th following the election a board of canvassers for that county was convened at the county seat of said county, and it proceeded "to open the returns from the various precincts in said county, and make abstracts of the votes," as provided by law, and on November 14th adjourned. This canvass disclosed the fact that the plaintiff and defendant had the highest and an equal number of votes for the office of sheriff. Subsequently, on November 22d, the auditor of said county, pursuant to the provisions of Section 26, c. 84, Laws 1890, proceeded "publicly to decide by lot which of

the persons so having an equal and the highest number of votes" should "be declared duly elected," and he having by such method decided that the defendant should be declared duly elected, issued to him a certificate of his election as provided in said act. On the 12th day of December following said election the plaintiff served upon said defendant a notice in writing that he intended to contest his (defendant's) election as such sheriff, as provided in Section 1489, Comp. Laws. On December 15th the judge of the circuit court made an order requiring said plaintiff to show cause why said notice of contest should not be set aside, not having been served within twenty days after the canvass; and on December 19th said order to show cause was heard, and the court thereupon made an order setting aside said notice of contest; to the making of which order said plaintiff excepted, and from it appeals to this court.

The question presented for our decision is: Did the twenty days allowed plaintiff to serve his notice of contest commence to run upon the adjournment of the board of canvassers on November 14th, or at the time the tie was decided by lot on November 22d, and the defendant declared elected? The determination of this question involves the construction of the term "canvass," as used in section 1489, Comp. Laws. This section, so far as it relates to the question in controversy, is as follows: "Any candidate or person claiming the right to hold an office contested, or any elector of the proper county desiring to contest the validity of an election or the right of any person declared duly elected to any office in said county, shall give notice thereof in writing to the person whose election he intends to contest, within twenty days after the canvass of the votes for such election, which notice shall be served in the same manner as a summons in a civil action." If the term "canvass," as used in this section, is limited and confined to the acts of the county board of canvassers as constituted under Section 1, c. 84, Laws 1890, then, as that board completed its labors and adjourned on November 14th, the notice was not served within time, and the order of the court was right; but if, as is contended by appellant, the term "canvass" embraces and includes

the further proceedings taken by the the auditor on November
22d, provided for in Section 26 of said last-mentioned act, then
the notice was served in time, and the order of the court below
should be reversed.    Section 26, referred to, is as follows:    "If
the requisite number of county officers shall not be elected by
reason of two or more persons having an equal and the highest
number of votes for one and the same office, the county clerk,
whose duty it is to compare the polls, shall give notice to the
several persons having the highest and equal number of votes
to attend at the office of the county clerk or auditor, at the
time appointed by said county clerk or auditor, who shall then
and there proceed publicly to decide by lot which of the per-
sons so having an equal number of votes shall be declared duly
elected, and the said county clerk shall make and deliver to
the person thus duly declared elected a certificate of his elec-
tion, as hereinbefore provided."    The term "canvass," as used
in statutes relating to elections, has not, so far as our re-
searches have extended, received any strictly legal definition,
and, as generally understood, its meaning is not very definite
or certain.    Webster defines the term as a verb, "to examine
thoroughly; to search or scrutinize;" and as a noun, "a close in-
spection to know the state of; as to canvass a vote."    Mr.
Bouvier, in his Law Dictionary, (volume 1, p. 238,) defines
"canvass" as "the act of examining the returns of votes for
public officers.    *    *    *    The determination of the board of
cavassers of the persons elected to an office is *prima facie* evi-
dence only of their election."    And under the head of "Canvass-
ing Board," in 6 Amer. & Eng. Enc. Law, p. 310, it is stated:
"In nearly all the states the boards of canvassing officers are
held to be ministerial officers, whose duty it is to receive re-
ceive returns from the various precincts or counties, as the
case may be, and declare the results as shown by the face of
the returns."    The term "canvass," as used in our statutes,
seems to have a broader and more comprehensive meaning
that is given in in either of the definitions above quoted, and
is made apparently to include all the proceedings for deter-
mining the result of an election from the closing of the polls to

the formal declaration of who are elected. Section 1464, Comp. Laws, provides that "as soon as the polls of the election shall be finally closed the judges shall immediately proceed to canvass the vote given at such election." Section 1, c. 84, Laws 1880, (being Section 1471, Comp. Laws, with a few slight changes,) does not contain the term "canvass," but provides that the board, composed of certain county officers therein specified, "shall proceed to open the returns from the various precincts in said county and make abstracts of the votes; * * * and it shall be the duty of the county clerk, or the county auditor, as the case may be, to make out a certificate of election to each of the persons having the highest number of votes * * * for county or precinct officers." While, as before stated, the term "canvass" is not used in this section, it clearly appears by Section 2 that such county board is a canvassing board, as that section provides that each of the aforesaid abstracts (mentioned in Section 1) of the votes made as aforesaid shall be duly signed and certified by the said canvassers under the seal of the said county clerk. It will be further noticed by an examination of Section 1 that no provision is made, in direct terms, that said canvassing board shall decide, determine, or declare any person elected. Section 3 (relating to members of congress) provides that "the person having the highest number of votes shall be considered duly elected," and also provides that when there is a tie the secretary of state, in presence of the governor, etc., shall decide by lot which of said persons shall be elected. The proceedings for the canvass of the vote for state officers under Section 8 is more full and explicit. The section is as follows: "They shall make an abstract stating the number of ballots cast for such office, the names of all persons voted for, for what office they respectively received the votes, and the number of votes each received, in words, at length, and stating whom they declare to be elected to each office, which abstract shall be signed by the canvassers in their official capacity and as state canvassers, and have the seal of the state affixed." Construing these various sections together as constituting our election

system, it seems to us quite clear that the legislature, in using the term "canvass," in Section 1489, intended to include and embrace all the various acts of the canvassing board or officers necessary to fully decide or determine who of the persons voted for should be deemed or declared elected; and that such canvass cannot be said to have been made until that result is reached, or the fact—as in case of a tie of candidates for the legislature—that no decision can be made except by another election by the people. In other words; that the expression "make out a certificate of election to each of the persons having the highest number of votes," etc., in Section 1, "shall be considered duly elected or shall be elected" in section 3, "stating whom they declare to be elected to each office" in Section 8, and "which of the persons so having an equal number of votes shall be declared elected" in Section 26, were intended by the legislature to mean substantially the same, namely, the ascertaining who of the persons voted for are deemed, considered, or declared elected as shown by the final result of the canvass.

Can it be claimed that, in the case of two candidates for congress having an equal number of votes, the vote is canvassed when that fact is ascertained, and that the subsequent proceedings by identically the same persons in ascertaining which of the two is elected or "shall be elected" is not a part of the canvass? This case, perhaps, presents the question a little stronger than the one before us, for the reason that there the same board continues, while in this case only a part of the old board continues, although the important member of the board —the one who organizes it—continues. Returning to the consideration of Section 1489, Comp. Laws, it will be observed that an elector can only contest the right of any person "declared duly elected." If the restricted construction of the term "canvass" insisted upon by the respondent is given that section, an elector could not contest the election of any county officer except in case of a tie vote, as the law makes no provision for declaring any officer elected by the county canvassing board. But we apprehend that no one insist upon such a construction, yet there is no doubt such elector could not serve any valid no-

tice of contest in the case of a tie until the person whose right to the office he sought to contest had been "declared duly elected" under Section 26, for such are the terms imposed. Can it be, then, that while an elector who seeks to contest in a case of a tie vote must wait until the tie vote is decided, and the person "declared duly elected," before he can give a valid notice, a person claiming the office himself, who desires to contest, may serve his notice before his competitor is declared elected, or it is in any manner determined whether he or his opponent is entitled to the office? We cannot think the legislature intended to adopt a different rule in the same section as to the event when the time for serving the notice should commence to run in the case of an elector and that of a person claiming the office,—that the time in one case should commence to run from the adjournment of the canvassing board, and in the other from the time it is decided and declared by the auditor who is elected. Such a construction would seem to us to be clearly contrary to the intention of the legislature, and should only be adopted when the language will admit of no other construction, which we think is not the case here.

Again, it will be noticed that Section 1489 provides that the notice of contest shall be given "in writing to the person whose election he intends to contest." What is the meaning of the term "election," as used in this section? Do the law-makers refer to the candidacy of a person for an office,—one who simply claims that he has received the highest number of legal votes for the office? or do they mean the person who has been in some manner decided or declared to be elected? We think the legislature intended by that that term the person actually determined to have been elected. This view seems to be confirmed by the definition of the term "election" by law writers. Bouvier in his Law Dictionary, (volume 1, p. 519,) defines "election:" "Choice, selection; the selection of one man from amongst more, to discharge the duties in a state, corporation, or society." Mr. Anderson, in his Dictionary of Law (page 394) defines the term: "A choosing or selecting; also the condition of having been chosen or selected; choice or se-

lection." And this term, as generally used, is understood to mean one who has by some legally constituted board been declared elected to an office. We think, therefore, that the expression "the person whose election he intends to contest" is a person who has been decided or declared to be elected by a board or officer authorized to determine the result of the election,—one no longer simply a candidate voted for or subject to be declared elected, but one so declared or decided to be elected, and who has received, or is found entitled to receive, a certificate of his election. It is earnestly contended by respondent that, notwithstanding when the board of canvassers, as originally constituted, adjourned on November 14th, it had not been determined whether the plaintiff or defendant should be declared to be elected, and the plaintiff did not then know whether or not he would desire to contest the election, as he might by the subsequent proceedings be the person "declared duly elected" yet it was his duty, in order to protect his rights, to initiate contest proceedings by serving his notice of contest within twenty days from the adjournment of such board, although the auditor might not have finally decided the election and declared the result until more than twenty days after the board had adjourned. We cannot accede to this proposition. The time within which the auditor must proceed to decide who shall be declared elected is not fixed or limited by law; and hence it is within his power to delay proceedings, if the construction of the law contended for by respondent is the true one, so as to compel a party awaiting his decision to commence contest proceedings, and thus present the anomaly of a party instituting and prosecuting a suit against an opposing candidate before it is determined whether he or his opponent is elected, or whether or not it will be necessary for him to initiate such a contest, and when the final proceedings of the auditor may result in declaring him elected. Will the law require of one so situated that he serve a notice of contest when such contest may never become necessary, and when he is unable to determine whether or not he desires to make such a contest, or whether he or his competitor will be declared

elected? It seems to us no such useless proceeding was intended by our legislature. As before stated, an elector is authorized to serve a notice of contest within twenty days after the canvass; but he cannot serve it until the person whose election he desires to contest is "declared duly elected." A board adjourns, and, in case of a tie vote, the auditor, on the twenty-first day thereafter, decides and declares who is duly elected. While it is undetermined who is duly elected the elector can serve no notice of contest. Says the respondent to such elector, "The canvass was made more than than twenty days ago, hence your time for serving a notice has expired." What becomes of the right of contest of the elector? Is a construction of the statute that might result in thus depriving the elector of his right to contest permissible except in a case where the statute is so clear as to only admit of such construction? But in this case the statute is clear that an elector has twenty days after the result is declared by the auditor, and thus the canvass continues, as to him, until one of the persons who has the highest and equal number of votes is "declared duly elected." If, then, the canvass continues as to him until the result is declared, must it not recive the same construction as to a candidate who claims the office? Will it be seriously claimed that the term "canvass," as applied to an elector, means one thing, but as applied to a candidate claiming the office it means an entirely different thing? That in the one case the canvass is made and concluded only when the result of the election is ascertained by the auditor and the person "declared duly elected," and in the other case when the canvassing board adjourns? We think no such intention can be imputed to the law-makers. It is more reasonable, we think, to say that the legislature intended that no person having the right to consent should be required to serve a notice of contest until it shall be determined that his competitor had been elected, and so declared. Then his right to contest commences. Then he can properly proceed to institute his proceedings, and take the necessary steps to vindicate his rights. The views here expressed lead

to the conclusion that the order of the circuit court should be reversed, and it is so ordered.

BENNETT, J., concurs.

KELLAM, J. (*dissenting.*) I am unable to concur with the majority of the court in the determination of this case. Referring to Section 1489, Comp. Laws, as quoted in the opinion of the presiding judge, our disagreement is principally as to the proper interpretation and effect of the expression "the canvass of the votes for such election," for it is within twenty days from that event that notice of contest must be given. I am quite satisfied to accept as a starting point the definition of the word "canvass" as found by the presiding judge in Webster's dictionary, to-wit, "close inspection to know the state of;" and, so substituting the definition for the word itself, the expression, with its immediately preceding context, will be, "within twenty days after the close inspection to know the state of the votes for such election;" and this, I think, is precisely the thought the legislature meant to and did express in said section. The canvass has exclussive reference to something which has already occurred, to-wit, the vote cast at such election; and its office and object are to ascertain and "know to the state of" such votes. It is provided by Section 1464, Comp. Laws, that immediately upon the close of the poll on election day the judges shall "proceed to canvass the vote,"— that is, ascertain the state of,—for to do this they shall (Section 1467) count and ascertain the number of votes cast, and the clerks shall set down in their poll-books the name of every person voted for, written at full length, the office for which such person received such votes, and the number he did receive." The same section provides a form for this statement or return. When completed and certified to by the judges, one of such poll-books is to be inclosed and sealed, and delivered to the county clerk of the county in which such election was held. On or before the tenth day thereafter, the returns being all received by such clerk or auditor, (Section 1, c. 84, Laws 1890,) occurs the canvass for the county. The county board of canvassers shall consist of the clerk or auditor, if not a candidate,

but, if so, "he shall take no part in the canvass," and two
other qualified county officers, selected as provided in said Sec-
tion 1.    These officers, called in Section 18 of said Chapter 84
the "board of canvassers for the county," shall "proceed to
open the returns from the various voting precincts in said
county, and make abstracts of the votes in the following man-
ner:    The abstracts of the votes cast for governor [and other
state officers, naming them] shall be on one sheet; * * *
the abstracts of the votes for the members of the legislature
and of county and precinct officers shall be on one sheet." Sec
tion 2 of said chapter then provides that "each of the aforesaid
abstracts of the votes made as aforesaid shall be duly signed
and certified by the said canvassers, under the seal of the said
county clerk or auditor, and shall be deposited in the office of
said clerk or auditor."    This is all the statute directs or auth-
orizes the board to do; and, having done this, the board and
the canvassers have completed their work, and exhausted
their powers as canvassers.    The object of the canvass was to
ascertain and show the state of the vote.    This has been done,
the result of the vote fully and particularly exhibited, certified
to, signed, sealed, and deposited in the clerk's office; and the
board is thenceforth *functus officio.*    It then becomes the duty
of the county clerk or the county auditor, as the case may be,
"to make out a certificate of election to each of the persons
having the highest number of votes for members the legisla-
ture, * * * and for county and precinct officers, repect-
tively, and to deliver said certificate to the person entitled
to it," etc.    But my brothers are of the opinion that the can-
vass is not complete until the canvassers have declared some-
body elected to the various office to be filled, which, in my
judgment, can only mean that the canvass is not complete until
the canvassers have done something which the statute has not
authorized them to do, and which they have no legal power to
do.    The canvassers in this case, if the statute is allowed to
define their duties, have nothing whatever to do with declaring
which candidates are duly elected; and any delaration they
might make in this respect would be assumptive and gratuitous.

They are to make and certify a statement showing the condition of the vote, and the law itself does the rest by declaring that the person having the highest number of votes is elected. But suppose the law did in defining the duties of the canvassers —as it does in some instances—provide that they should declare which candidates were respectively elected, what would its plain intent and meaning be? Simply that they should declare which candidates, upon the canvass they had so made, had recived the highest number of votes, and so were duly elected. It certainly could not mean that they should declare somebody elected in case of a tie, for in such case the law says there is no election. If a decision and declaration by the canvassers that some candidate was duly elected were an essential and indispensible part of the canvass, then, in case of a tie, re quiring a new election, there never would be a completed canvass of the votes cast at the first election, for no candidate could be declared elected except as the result of the second election; or perhaps it would more logically follow that the first canvass was still open and incomplete until it included the second election, so that the board of canvassers might be able to declare who was duly elected, This latter conclusion seems palpably unreasonable, but why does it not legitimately and necessarily follow the theory of the majority opinion? The determination by lot is but a substitute for a new election. The proceeding is just as separate from and independent of the first election as a new election would be. Or suppose the law had provided that in case of non-election in consequence of a tie the old incumbent should hold over, then there never would be a completed canvass, for nobody could ever be "declared duly elected." Suppose upon complaint that the canvassing board in this case when properly organized had refused to make the canvass, *mandamus* were issued to compel such action, what would the writ command them to do? Unquestionably simply to examine and tabulate the returns as provided in said section, and certify to and file the abstract and a return that they had done this, would, in my judgment, be accepted by any court, as a full and complete answer to the writ. Or

suppose, in this very case, the abstract showing a tie vote be-
tween appellant and respondent, the clerk had neglected or
declined to decide the tie by lot, as required by law; to whom
would the *mandamus* be issued, and who would be commanded
to perform this duty,—the board of canvassers or the clerk as
an individual and independent officer?   I think there could be
but one answer to this question.

That the term "canvass" was not intended to and does not
include the decision by lot is made more clearly manifest by
Section 1471, Comp. Laws, changed in praseology, but not in
meaning, by Section 2 of said chapter 84, Laws 1890, which
provides that "immediately after canvassing the returns and
making the abstracts of votes as provided in this section the
clerk shall," etc.   Now, the decision by lot is not provided for
in this section, but subsequently, and still the canvassing is to
be done as provided in that section, and all the requirements
of that section are fully met long prior to the decision by lot.
In my judgment, the canvass thus provided for is nothing more
or less than an "official count," and the same proceeding is
distincly so called in the statutes of some of the states; and it
was this official count or canvass, completed, verified, signed,
and filed in the office of the clerk, showing the state of the vote,
and that no sheriff was elected because two had received an
equal and she highest number of votes, that made it necssary
to adopt some other and further proceeding to fill such office;
in this case, by statute, a determination by lot; in others, by
statute, a new election.   This determination by lot was just as
separate and distinct for the election as a new election would
be.   It does not assume to determine who was elected, for it is
based by the statute itself upon the fact that neither was elected.
It is simply a plan for deciding who, under the circumstances,
shall be "declared elected,"—who shall be deemed or taken
to be elected,—preciselyas though, under the same circumstan-
ces, the law had required the governor to designate which of
the two should be considered elected.   The board of canvass-
ers is an absolute stranger to the proceeding.   In fact, when
this drawing takes place, there is no board.   It has disbanded,

and is defunct. That the drawing is done by the clerk has, in my judgment, no important bearing upon the question. He may or may not have been one of the board of canvassers, and certainly in no case could he be the board itself. The construction of this statute must be the same if this decision by lot were to be made by some party who could not under any circumstances be a member of the board. I think my brothers feel themselves rather forced into their position by what appears to them the threatening inconsistency of requiring a candidate to give notice of contest before he knows that a contest in his interest will be necessary. He might win in "the decision by lot," and then a contest would be unnecessary. This argument, it seems to me, can only follow a narrow and selfish view of the scope and spirit of the contest law. Offices are not created for the benefit of parties who may be temporarily entitled to hold them, nor are election provided for and held in the exclusive interest of candidates. If, in this contest, appellant is only representing his own individual interest,—his personal rights to the emoluments of the office,—I think it might well be argued that he is now estopped from asserting that he had received a plurality vote, because he had deliberately elected to take his chances with his competitor in a decision by lot, well knowing that such decision could only be resorted to if he had not received such vote. I would find the troublesome inconsistency not where my brothers find it, in the law itself, but in allowing a candidate to participate in a drawing by lot on the sole ground of a tie vote, and then, having lost, to assert there was no tie, but that he was entitled to the office by virtue of having received more votes than his competitor. In People v. Robertson, 27 Mich. 118, the court declined to apply the doctrine of estoppel, upon such facts, but plainly intimated that it was because the action was brought by the attorney general for the people that the conduct of the candidate ought not to estop the people, or preclude inquiry by them into the manner in which their election laws had been administered or their elections conducted. In my judgment, such practice can only be tolerated on the theory that the election contest law has a

broader purpose and fuction than simply to secure the personal rights, and protect the selfish interests, of the candidates themselves. The general public, more than any individual candidate or otherwise, has a paramount interest in the honesty and cleanness of election proceedings; and, in contesting the apparent result of an election on the ground that the will of the people has been thwarted by fraudulent votes which ought not to have been counted, other interests are involved, and ought to be considered, besides those of the candidate himself; and while he, as such contesting candidate, is perhaps in position to subordinate public interests to his own by declining to expose the frauds by which the law and the general body of electors have been cheated and wronged until he has unsuccessfully experiment with an easier and cheaper method, based solely upon and provided by the law for the solution of an honest tie, I do not think the law should be ingeniously strained or expanded for the purpose of giving him a personal advantage as a reward for so doing.

But let us examine Section 1489 more closely. It plainly provides for two classes of contestants: (1) "Any candidate or person claiming the right to hold an office contested;" (2) "any elector of the proper county desiring to contest the validity of an election, or the right of any person declared duly elected to any office in said county." To determine the relation of the contestant to these contest proceedings it is necessary, first of all, to ascertain to which of these classes he belongs. Upon this question he leaves the court in no doubt. His notice declares that he was a candidate, and that he claims the office for himself on the ground that he received the highest number of legal votes cast; and he brings this contest on his own motion, and in his own name as plaintiff. Section 1491 provides that "such contest cannot be brought by an elector without the notice is signed by the district attorney of the proper county; or, upon his refusal to so sign said notice of contest, the contest may be allowed by the court or judge thereof." The notice is not signed by the district attorney, nor is the contest brought on leave of court or judge. It is apparent that the contestant be-

longs to the first class, to-wit, ''a candidate or person claiming the right to hold an office contested.'' Dropping out, then, the words which only provide for and apply to the second class of contestants, to which appellant confessedly does not belong, the section reads thus: ''Any candidate or person claiming the right to hold an office contested * * * shall give notice in writing to the person whose election he intends to contest within twenty days after the canvass of the votes for such election,''—that is, the votes cast at such election. In this case, what does the appellant assert as the ground of his contest? That he was duly elected sheriff, and claims the office by virtue of having received the highest number of votes, but that the canvassing board, by throwing out the returns from one or more voting precincts, has made it appear that he was not elected. When and how did they so make it appear? By their ''canvass of the votes for such election.'' Then, when must he serve his notice of contest? Within twenty days after such canvass; that is, the canvass which shows he was not elected, when in truth and in fact, as he alleges, it ought to show he was elected. This is his grievance. It occured then, and then commences to run the twenty days within which he may institute a contest for its correction. Finally, I think the majority opinion is fairly criticisable in this respect: The expression ''canvass of the votes'' in connection with election proceedings is not an unusual one, and as such has a popular and generally accepted meaning, and was probably so used by the legislature. I think the opinion invents for and attaches to it a new and unusual meaning, and that, too, for the purpose of making the law cover and control a case not within the contemplation of the law-makers, and perhaps not within the purview of the law itself. The opinion says that an elector cannot serve his notice of contest until a person is ''declared elected'' and that could not be done in this case until the tie was decided, and consequently the elector must have twenty days from that event in which to serve his notice. But is the proceeding then and thus initiated a contest against ''the person whose election he intends to contest?'' In the light of the

authorities, it can hardly be claimed that respondent received his certificate or is now holding the office because he was elected thereto, or by election, for the ststute only authorizes the "decision by lot" in case he "shall not be elected." I think he holds the office, not by virtue of an election, nor because he was elected, but by virtue of a subsequent and independent proceeding, made necessary by the fact that neither he nor his competitor was elected. As a result of these views, I think the order of the circuit court was right, and should be affirmed.