No. 48,660

LARRY ROGERS, *Plaintiff*, v. ELWILL M. SHANAHAN, Secretary of State, *Defendant.*

(565 P. 2d 1384)

Opinion filed December 23, 1976.

*J. F. Steineger,* of Kansas City, and *Robert E. Tilton,* of Topeka, argued the cause for plaintiff.

*John R. Martin,* First Assistant Attorney General of Topeka, argued the cause for defendant.

The opinion of the court was delivered by:

FATZER, C. J.: This is an original action in mandamus brought by petitioner Larry Rogers, Senator-elect for the 21st Senatorial District, against respondent, Elwill M. Shanahan, Secretary of State, to compel her to perform the duties of her office as set forth in K. S. A. 1975 Supp. 46-142 (*b*).

The facts are not in dispute. At the general election held on November 2, 1976, petitioner Rogers was elected to the office of Senator for the 21st Senatorial District of the State of Kansas. Subsequent to the general election, the State Board of Canvassers made the final canvass of the election and determined petitioner had been duly elected. In accordance with this determination, the respondent, Secretary of State Elwill M. Shanahan, issued to petitioner a certificate of election dated November 24, 1976, and transmitted to petitioner that certificate and a letter of the same date notifying petitioner of the preorganizational meeting of the Kansas

Senate to be held in the Senate Chambers at 10:00 a. m., Monday, December 6, 1976.

On Thursday, December 2, 1976, the incumbent senator for the 21st Senatorial District, Leslie A. Droge, filed a statement of his intention to contest the election of petitioner Rogers. Such notification of intent to contest petitioner's election, under respondent's interpretation of K. S. A. 1975 Supp. 46-143, rendered petitioner ineligible to attend the preorganizational meeting of the Senate. On December 4, 1976, petitioner filed in the Supreme Court a petition for writ of mandamus to compel the Secretary of State to read his name at the preorganizational meeting among the roll of members-elect to the Kansas Senate certified by the State Board of Canvassers. Respondent answered, and both parties filed supporting memorandums.

Because of the pressing public importance of this question, hearing on the matter was set for December 6, 1976, at 8:30 a. m. Oral arguments were heard and the court thereupon issued an order directing the respondent, the Secretary of State Elwill M. Shanahan, to read the name of petitioner Rogers from the roll of members-elect to the Senate at the preorganizational meeting on December 6, 1976, at 10:00 a. m. as required by K. S. A. 1975 Supp. 46-142 ($b$). This opinion supplements that order.

K. S. A. 1975 Supp. 46-142 and 143 govern preorganizational meetings of members-elect to the Senate. K. S. A. 1975 Supp. 46-142 ($b$) provides:

"Persons elected to the senate in 1976 for terms to commence in 1977 shall meet at the state capitol in Topeka on the first Monday in December in 1976, and such members-elect shall convene at 10 o'clock a. m. in the senate chamber. The secretary of state or an assistant or deputy assistant designated by the secretary of state shall call the meeting to order, and shall call the roll of the members-elect from the list certified by the state board of canvassers and shall thereupon appoint one of the members-elect to be temporary chairperson of the meeting. Upon adjournment, on the same day, the members-elect of the majority and minority parties of the senate shall caucus and nominate their candidates, respectively, for president and vice-president of the senate for the next ensuing four years and select, respectively, their majority leader, minority leader, and other caucus or party officers. Such bodies of members-elect may determine such other matters as their parties shall deem necessary and proper and as will aid the legislature in organizing and performing its functions as soon as possible after the legislature is convened. In each fourth year after 1976, the members-elect of the senate shall meet and caucus in the same manner and take such actions as hereinbefore indicated."

K. S. A. 1975 Supp. 46-143 provides:

"When the secretary of state transmits the certificate of election to each of the members-elect to the legislature, there shall be enclosed therewith a notice of the preorganizational session. No candidate involved in an election contest shall be notified of any such meeting, nor shall any such candidate be eligible to attend."

As previously noted, respondent reads 46-143 as making petitioner ineligible to attend the preorganizational meeting. The petitioner argues that K. S. A. 1975 Supp. 46-143 has the effect of barring him from the rights and privileges of a senator-elect and denies him and his electorate due process of law as guaranteed by Section 18 of the Bill of Rights of the Kansas Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States, and equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. Petitioner further argues the language of 46-143 is ambiguous and in conflict with 46-142.

When the constitutionality of a statute is challenged, this court is guided in its consideration by certain principles which were recently noted in *Leek v. Theis,* 217 Kan. 784, 792-93, 539 P. 2d 304, 312-13:

"Long-standing and well established rules of this court are that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. (*State, ex rel., v. Fadely,* 180 Kan. 652, 658, 659, 308 P. 2d 537; *Wall v. Harrison,* 201 Kan. 600, 603, 443 P. 2d 266; *Moore v. Shanahan,* 207 Kan. 645, 651, 486 P. 2d 506; and 16 Am. Jur. 2d, Constitutional Law, § 175, pp. 399-401.)"

Both petitioner and respondent read K. S. A. 1975 Supp. 46-143 as making petitioner ineligible to attend the preorganizational meeting provided for in K. S. A. 1975 Supp. 46-142 because his election has been contested. Petitioner contends the statute is therefore void because it denies him certain constitutionally guaranteed rights. Respondent argues no constitutional rights are involved or violated. From our reading of the statute, we find it unnecessary to reach the constitutional questions raised. We believe neither of the parties has correctly interpreted K. S. A. 1975 Supp. 46-143.

When, as here, the resolution of a question requires construing a statute, the court is guided by certain presumptions. It is presumed the legislature understood the meaning of the words it used

and intended to use them; that the legislature used the words in their ordinary and common meaning; and that the legislature intended a different meaning when it used different language in the same connection in different parts of a statute. *See* 82 C. J. S. *Statutes* § 316 (b) (1953); *See also, Rausch v. Hill,* 164 Kan. 505, 190 P. 2d 357.

In *Hessell v. Lateral Sewer District,* 202 Kan. 499, 502, 449 P. 2d 496, 500, it was said:

"Appellants' contention depends upon a construction of the statute. In construing a statute words and phrases should be construed according to the context and the approved usage of the language. (K. S. A. 77-201, Second.) Words in common use are to be given their natural and ordinary meaning in arriving at the proper construction of a statute. (*Roda v. Williams,* 195 Kan. 507, 407 P. 2d 471.)"

In arriving at the meaning of K. S. A. 1975 Supp. 46-143, the terms "member-elect" and "candidate" appear to be the key. The statute reads:

"When the secretary of state transmits the certificate of election to each of the *members-elect* to the legislature, there shall be enclosed therewith a notice of the preorganizational session. No *candidate* involved in an election contest shall be notified of any such meeting, nor shall any such *candidate* be eligible to attend." (emphasis supplied)

The terms "candidate" and "member-elect" are not synonymous. A "candidate" is one who *seeks* an office. Black's Law Dictionary 260 (4th ed. 1951); 29 C. J. S. *Elections* § 1 (10)a. (1965). In *Tucker v. Raney,* 145 Kan. 256, 258, 65 P. 2d 329, 331, it was said:

"The word 'elect' when applied to an office is frequently used in the sense of one *chosen,* or properly chosen, or chosen as provided by law." (emphasis supplied)

The term "elect" used as an adjective is defined as *being chosen* for an office, but not yet installed; it is usually used after a noun (as president-elect). Webster's Third New International Dictionary 731 (1961). "Member-elect" is not defined in the Kansas Statutes Annotated. Neither definition of "candidate" given either adds to or detracts from what has been said above. *See,* K. S. A. 1975 Supp. 46-221 (*b*); K. S. A. 1975 Supp. 25-4102 (*a*).

The Supreme Court of South Dakota long ago distinguished between a person declared to be elected and a person who is simply a candidate. The words of that court in *Bowler v. Eisenhood,* 1 S. D. 577, 48 N. W. 136 (1891), are appropriate to the case at bar:

". . . [S]ection 1489 provides that the notice of contest shall be given 'in writing to the person whose election he intends to contest.' What is the meaning of the term 'election,' as used in this section? Do the law-makers refer to the candidacy of a person for an office,—one who simply claims that he has received the highest number of legal votes for the office? Or do they mean the person who has been in some manner decided or declared to be elected? We think the legislature intended by that term the person actually determined to have been elected. This view seems to be confirmed by the definition of the term 'election' by law writers. Bouvier, in his Law Diction-ary, (volume 1, p. 519,) defines 'election:' 'Choice, selection; the selection of one man from amongst more, to discharge the duties in a state, corpora-tion, or society.' Mr. Anderson, in his Dictionary of Law (page 394) de-fines the term: 'A choosing or selecting; also the condition of having been chosen or selected; choice or selection.' And this term, as generally used, is understood to mean one who has by some legally constituted board been de-clared elected to an office. *We think, therefore, that the expression 'the per-son whose election he intends to contest' is a person who has been decided or declared to be elected by a board or officer authorized to determine the result of the election,—one no longer simply a candidate voted for or subject to be declared elected, but one so declared or decided to be elected, and who has received, or is found entitled to receive, a certificate of his election.*" *Id.* at 583-84, 48 N. W. at 138. (emphasis supplied.)

Since a person running for a senate seat must be "declared duly elected" before his election may be contested (K. S. A. 25-1405), there must necessarily be a "member-elect" involved in any elec-tion contest. Another "candidate" or any qualified voter of the county or district to be represented by such "member-elect" may contest his election. *Id.*

The legislature could have used the term "member-elect" instead of "candidate" in K. S. A. 1975 Supp. 46-143, but it did not. Giving the words the legislature did use their ordinary and common mean-ing, and being guided by the rules and presumptions of statutory construction noted above, we read the statute as saying "members-elect" shall receive a certificate of election and notice of the pre-organizational meeting from the Secretary of State. Other "candi-dates" who may be involved in an election contest are not to receive a notice of such meeting nor are they eligible to attend.

This construction of K. S. A. 1975 Supp. 46-143 comports with another presumption in aid of statutory construction. It is pre-sumed the legislature had and acted with full knowledge and in-formation as to the subject matter of the statute, as to prior and existing law and legislation on the subject of the statute and as to the judicial decisions with respect to such prior and existing law and legislation. 82 C. J. S. *Statutes* § 316 (1953); *See, Bayless v.*

*List and Clark Construction Co.*, 201 Kan. 572, 441 P. 2d 841; *Peters v. Peters*, 177 Kan. 100, 276 P. 2d 302.

The general principles of law involved are discussed in 26 Am. Jur. 2d *Elections* § 305:

"A certificate of election is not title to a public office, but a mere muniment of title. It is only prima facie evidence of the holder's right to the office. Unless so provided by statute, it is not conclusive of an election as against direct attack, yet it entitles the recipient to take the office as against an incumbent whose term has expired, notwithstanding the pendency of a proceeding to contest the election instituted by the incumbent or another. He has a right to exercise the functions of the office until the true result of the election is determined in the manner authorized by law, or until the certificate is set aside in an appropriate proceeding. In other words, the certificate confers a temporary right subject to destruction by an adverse decision of a tribunal having jurisdiction in the matter."

An excellent statement of Kansas law on the subject is found in *In re Gunn*, 50 Kan. 155, 32 Pac. 470. That controversy involved which of two rival factions was entitled to organize the 1893 session of the Kansas House of Representatives. In reaching its decision, the court discussed the effect and conclusiveness of certificates of election:

"It may seem plausible, without full consideration, to say that only those members of the legislature who are actually elected, whether having certificates or not, are the persons that should organize either house. But some method of organization is necessary; some written evidence of title must be created or exhibited before any person can be regarded as having a *prima facie* right to a seat in the legislature. Those persons having certificates, and only those, must be permitted to organize, and no authority can change or overthrow that right or *prima facie* written evidence of title of a member except the house itself; and the members of the house cannot be regarded as a legal or constitutional house until there is some temporary or permanent organization by a majority thereof; that is, by 63 members having certificates of election. The certificates of election give a title to the members holding the same, which must govern their associates until there can be an adjudication by the house itself to the contrary; that is, by a constitutional house having a quorum. (*Id.* at 177, 32 Pac. at 474)

. . . . . . . . . . . . . . .

". . . The house, after it is organized, 'is the judge of the elections, returns and qualifications of its own members;' but, before organizing, the persons having certificates, whether eligible or not, are the members to organize. Before organizing, there is no one—no house—to reject or oust a member holding a sufficient certificate. There is no one—no house—to pass upon his

eligibility or election. Until the house is organized, the certificate is the evidence of the lawful title that controls." (*Id.* at 179, 32 Pac. at 475)

While matters of public policy are for the legislature, we would also note that the construction we have given K. S. A. 1975 Supp. 46-143 does have a beneficial effect favoring public interest. It is the accepted view that it is in the public interest for an elected office to be filled, and for the member-elect to exercise all the rights, responsibilities and duties of his office until the appropriate authority decides otherwise.

Judge McCrary, in his work on elections, states:

"Where two or more persons claim the same office, and where a judicial investigation is required to settle the contest upon the merits, it is often necessary to determine which of the claimants shall be permitted to qualify and to exercise the functions of the office, pending such investigation. If the office were to remain vacant pending the contest it might frequently happen that the greater part of the term would expire before it could be filled; and thus the interests of the people might suffer for the want of the services of a public officer. Besides, if the mere institution of a contest was to be deemed sufficient to prevent the swearing in of the person holding the usual credentials, it is easy to see that very great and serious injustice might be done. If this were the rule, it would only be necessary for an evil disposed person, to contest the right of his successful rival, and to protract the contest as long as possible, in order to deprive the latter of his office for at least a part of the term. And this might be done, by a contest having little or no merit on his side, for it would be impossible to discover, in advance of an investigation, the absence of merit. And again, if the party holding the ordinary credentials to an office, could be kept out of the office by the mere institution of a contest, the organization of a legislative body, such for example as the House of Representatives of the United States, might be altogether prevented, by instituting contests against a majority of the members, or what is more to be apprehended, the relative strength of political parties in such a body might be changed, by instituting contests against members of one or the other of such parties. These considerations have made it necessary to adopt, and to adhere to, the rule, that the person holding the ordinary credentials shall be qualified, and allowed to act pending a contest and until a decision can be had on the merits." G. McCrary, A Treatise on the American Law of Elections, 227-28 (4th ed. 1897).

The filing of a contest in the Senate and its final determination could conceivably occur long after the election. The meeting of the State Board of Canvassers for making the final canvass of a general election is to be called not later than December 1, and it may be recessed from time to time until the canvass is complete. (K. S. A. 25-3206) The election can be contested up to thirty days after the declaration of the canvassers. (K. S. A. 25-1406) Witnesses may be subpoenaed and deposed in gathering supporting

information for the election contest. (K. S. A. 25-1407) After all materials are gathered, they are transmitted to the Secretary of State. (K. S. A. 25-1408) The Secretary of State is to deliver the materials to the presiding officer of the Senate *on or before the second day of the session of the legislature next after the taking of the depositions.* (K. S. A. 25-1409) Under our construction of K. S. A. 1975 Supp. 46-143, the member-elect performs as a member-elect and then as a senator until such time as the contest is decided.

Looking to the whole act in which the statute in question appears, we find further support for our construction. In *Fleming Company v. McDonald,* 212 Kan. 11, 16, 509 P. 2d 1162, 1167, we said:

"Another rule for construing statutes is that the legislative intent is to be determined by a general consideration of the whole act. Effect must be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious and sensible. (*Harris v. Shanahan,* 192 Kan. 629, 390 P. 2d 772.)"

The present wording of K. S. A. 1975 Supp. 46-143 was accomplished by H. B. 2032, an act concerning organization of the legislature which amended K. S. A. 25-3210, 25-3211, 46-142, 46-143 and 46-145. (1975 Kan. Sess. Laws, Ch. 270.) Viewing the whole act, we believe the various provisions are consistent, harmonious and sensible using the meanings we have accorded the two terms in question.

The act provides that the Secretary of State shall record and file each certified statement and determination as made by the State Board of Canvassers and shall transmit without delay a certificate of election to each of the persons declared to be elected. (§ 6; K. S. A. 25-3211) Members-elect to the Senate for terms to commence in 1977 shall meet in Topeka on December 6, 1976. (§ 1; K. S. A. 46-142 [*b*].) The Secretary of State shall notify each member-elect of this preorganizational session when she transmits the certificate of election. (§ 2; K. S. A. 46-143) At the Senate preorganizational meeting on December 6, the Secretary of State shall call the meeting to order and shall call the roll of the members-elect from the list certified by the State Board of Canvassers. (§ 1; K. S. A. 46-142) Upon adjourning the meeting the same day, the members-elect of the two parties shall caucus and nominate their candidates for Senate officers and party leaders; they may also determine such matters as their parties deem necessary and proper and as will aid the legislature in performing its

functions as soon as possible after the legislature is convened. (§ 1; K. S. A. 46-142 [b]) At the time fixed for convening the regular session of the legislature, the Secretary of State shall report to each house the list of members elected thereto in accordance with determinations of the State Board of Canvassers. (§ 5; K. S. A. 25-3210) The Secretary of State shall serve as temporary chairman of the Senate from the moment of convening until the president of the Senate has been duly elected. This election is the first order of business following the administration of oaths to the senators. (§ 1; K. S. A. 46-142 [d])

Under our construction of K. S. A. 1975 Supp. 46-143, a "member-elect" participates in the preorganizational meeting and is sworn in as a senator at the first regular session. Our statutes provide that the Secretary of State shall, at both the preorganizational meeting and the first regular session, read the roll of members-elect as have been declared elected by the State Board of Canvassers. The filing of an election contest has no effect on this list. The determination of the State Board of Canvassers stands until the Senate rules otherwise. (K. S. A. 1975 Supp. 46-142 [d]; Kan. Const. Art. 2, § 8) This can occur only after the Senate convenes at its first regular session. Giving the term "candidate" as used in K. S. A. 1975 Supp. 46-143 its plain meaning, which is something other than "member-elect," renders K. S. A. 1975 Supp. 46-143 consistent with the other statutes.

For the reasons as set forth in the foregoing opinion, a peremptory order of mandamus is allowed whereby the Secretary of State is directed to read the petitioner's name at the Senate preorganizational meeting among the roll of members-elect certified by the State Board of Canvassers as provided by K. S. A. 1975 Supp. 46-142.