No. 97,087

Young Partners, LLC., *Appellee,* v. Board of Education, Unified School District No. 214, Grant County, Kansas, *Appellant.*

(160 P.3d 830)

Opinion filed June 22, 2007.

*K. Mike Kimball*, of Kimball Law Firm, LLP, of Ulysses, argued the cause and was on the briefs for appellant.

*James D. Oliver*, of Foulston Sieflin LLP, of Overland Park, argued the cause, and *Randall D. Grisell*, of Doering & Grisell, P.A., of Garden City, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Young Partners, LLC (Young) obtained an injunction against Unified School District No. 214 of Grant County (the school district) to stop the school district's eminent domain action against Young's reversionary interest in property owned by the school district. The district court held that the school district's eminent domain action under K.S.A. 72-8212a(b) impaired prior contractual obligations and thus violated the Contract Clause of the United States Constitution: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10. The school district appeals, and we reverse and remand.

*Facts*

The district court's decision was based on a statement of 22 facts with accompanying exhibits stipulated by the parties. Those facts establish that in 1947, Richard and Virginia Wilks transferred the following tract of land by general warranty deed to School District No. 43, the predecessor of USD No. 214:

"A tract of land located in the Southeast corner of the Southwest Quarter (SW¼) of Section Thirty-two (32), Township Twenty-Eight (28) South, Range Thirty-five (35) West of the Sixth P.M. Grant County, Kansas, described as follows: Beginning at the North line of U.S. Highway number 160 and on the East line of said Southwest Quarter (SW¼); thence North 417. 5 feet; thence West 417.5 feet; thence South 417.5 feet; thence East 417.5 feet to the place of beginning, the above described tract to contain four acres more or less. (Real Property)"

The deed contained a reversionary clause, providing that the transferred real property was "to be used for school purposes only, and if therefore abandoned at any time, to revert back to the owner or

owners of the Southwest Quarter of Section 32, Township 28 South, Range 35, Grant County, Kansas; and therefore to become her or his property without further legal action." From the time of the transfer to the present, the school district has also owned the land directly east of the 4 acres described above.

Over the next several decades, the school district constructed various improvements on the real property conveyed by the Wilks, including a school building in 1947, a gymnasium with additional classroom space in 1957, and a house and garage sometime after the construction of the gymnasium. The school and gymnasium encroach onto the eastern tract owned outright by the school district approximately 6 feet, 7 inches. The house and garage are located entirely on the property conveyed by the Wilks.

The school district does not currently use the school building, known as Red Rock School, for classroom instruction. However, the buildings constructed on the property are used for the following purposes:

"A) Annually a 'Reality Check' program is held at the Red Rock School in which 120 to 130 students participate. The students participating are freshmen at Ulysses High School.

"B) The Southwest Plains Regional Service Center (a consortium of all of the southwest Kansas school districts) has maintained in the Red Rock school facility one office (and sometimes two), for educational consultants.

"C) An educational consultant with the Southwest Plains Regional Service Center has maintained for a number of years (including the present school year) an office within the Red Rock school system. In connection therewith he has held seminars particularly aimed at enhancing the educational expertise of teachers in the education of migrant students.

"D) The house is occupied by a school district employee.

"E) The Ulysses Community Learning Center operated, until recently, from the Red Rock school building. The 'Ulysses Community Learning Center' took individuals who had not graduated from high school, taught them high school courses, and eventually those individuals received a high school degree issued by USD 214. Said degree is equivalent to the degree issued to normally graduating students.

"F) In addition, there are other uses of the Red Rock facility made from time to time by other educational entities."

Although the school district no longer conducts classroom activities on the property, it continues to maintain all facilities in work-

ing order at a cost of roughly $11,500 per year. In addition, the school district recently replaced a well pump on the property. An appraisal of the property conducted in May 2004 valued the property at $500 per acre, with the improvements valued at more than $100,000. The school district estimates that it would cost in excess of $1.4 million to replace the improvements on the property.

Young acquired the Wilks' property in 1997, making it the successor in interest to the grantors in the original warranty deed. Young has never taken any action to interfere with the school district's use of the property and does not intend to interfere with the school district's use of the property in the future.

In August 2005, the school district initiated condemnation proceedings against Young pursuant to K.S.A. 72-8212a in order to obtain by eminent domain Young's reversionary interest. The statement of stipulated facts lists five purposes that the school district intended to accomplish through the condemnations proceedings:

"A) To protect the school district's investment in the improvements.
"B) To maintain the facility in the event its need is necessary as a result of an influx of students increasing the student population of the district.
"C) Sale of the facility in the event a purchaser, who was suitable to the community, offered an adequate price for the facility.
"D) To prevent accidental loss of title to the property via an unintentional abandonment.
"E) To allow the 'moth balling' of certain portions of the facilities so that the cost of maintenance might be decreased."

In response to the school district's eminent domain action, Young filed this independent action to enjoin the eminent domain proceedings. Young alleged that the school district's eminent domain action was not instituted to effect a public purpose and alleged that K.S.A. 72-8212a(b) was overbroad in that it allowed a taking without a finding of public purpose.

In July 2006, the court issued a "Journal Entry of Decision," granting an injunction against the school district prohibiting it from pursuing its eminent domain action against Young's reversionary interest. The district court rejected Young's claim that the school district had failed to demonstrate that it was condemning the subject property for a valid public purpose. Instead, the court found

that it was "bound by the stipulated facts of the parties and there [was] no factual basis for this Court to determine that there is no valid public purpose accomplished by the Unified School District 214's taking of the Plaintiff's reversionary interest."

However, the district court did find that the school district's eminent domain proceeding would be an unconstitutional taking pursuant to Article I, § 10 of the United States Constitution in the Contract Clause: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10. Thus, the court held that "as applied to the facts of this case, K.S.A. 72-8212a is . . . unconstitutional." The district court reached this conclusion by determining that the original warranty deed was executed in 1947, and that K.S.A. 72-8212a was not enacted until 1982, roughly 35 years later. The court explained that "the State of Kansas has no right to pass a law which interferes with prior contractual rights of parties. *Singer et al. v. The City of Topeka, Kansas, et al.*, 227 Kan. 356[, 607 P.2d 467 (1980)]."

The district court held that K.S.A. 72-8212a was unconstitutional as an impermissible impairment of a contract right under the Contract Clause of the United States Constitution. Young agrees with this conclusion and argues that K.S.A. 72-8212a(b) is also unconstitutional because it does not limit a taking of property by a school district to a taking for a public purpose, but rather permits a school district to condemn property "for any purpose whatsoever." K.S.A. 72-8212a(b).

*Standard of Review*

This case calls on us to determine whether K.S.A. 72-8212a violates the United States Constitution.

In cases where the constitutionality of a statute is questioned, such constitutional challenges are questions of law over which this court has unlimited review. *State v. Moore*, 274 Kan. 639, 652, 55 P.3d 903 (2002). The constitutionality of a statute is generally "presumed, . . . all doubts must be resolved in favor of its validity, and . . . before a statute may be struck down, it must clearly appear that the statute violates the Constitution. [Citation omitted.]" *In re Care & Treatment of Hay*, 263 Kan. 822, 831, 953 P.2d 666

(1998). As this court explained recently in *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006):

> " ' "In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond reasonable doubt." ' [Citations omitted.]"

Similarly, the interpretation of a statute is a question of law over which this court has unlimited review. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006). "It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001) (citing *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 [1998]). "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). Statutes should not be construed to achieve unreasonable results. *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002). Furthermore, " 'it is the duty of the court, as far as practicable, to reconcile the different provisions [of an act] so as to make them consistent, harmonious, and sensible.' " *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 768, 69 P.3d 1087 (2003) (quoting *State v. Engles*, 270 Kan. 530, 533, 17 P.3d 355 [2001]).

## Impairment of Contracts

The school district advances several arguments as to why the district court's decision must be reversed. Its most compelling argument, although not fully developed, is that the date of the enactment of K.S.A. 72-8212a, which delegates to school districts the right to exercise eminent domain, is immaterial because the State has held the power of eminent domain since the date Kansas achieved statehood.

The United States Constitution provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10. This provision is commonly known as the "Contract Clause." See *Singer v. City of Topeka*, 227 Kan. 356, 365-66, 607 P.2d 467 (1980). However, "[f]reedom of contract is a qualified and not an absolute right. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." *Kansas City Power & Light Co. v. Kansas Corporation Comm'n*, 238 Kan. 842, 853, 715 P.2d 19 (1986). As the United States Supreme Court explained in *United States Trust Co. v. New Jersey*, 431 U.S. 1, 21, 52 L. Ed. 2d 92, 97 S. Ct. 1505 (1977):

> "Although the Contract Clause appears literally to proscribe 'any' impairment, this Court observed in [*Home Building & Loan Assn. v.*] *Blaisdell*, [290 U.S. 398, 428, 78 L. Ed. 413, 54 S. Ct. 231 (1934),] that 'the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.' [Citation omitted.] Thus, a finding that there has been a technical impairment is merely a preliminary step in resolving the more difficult question whether that impairment is permitted under the Constitution. . . . [W]e must attempt to reconcile the strictures of the Contract Clause with the 'essential attributes of sovereign power' [citation omitted] necessarily reserved by the States to safeguard the welfare of their citizens. [Citation omitted.]"

This restriction on the Contract Clause is known as the "reserved-powers doctrine." See 431 U.S. at 22-24. In the case of a public contract where the State (or some government agent) is one of the contracting parties, "[t]he initial inquiry [under the reserved-powers doctrine] concerns the ability of the State to enter into an agreement that limits its power to act in the future." 431 U.S. at 23. The doctrine

> "requires a determination of the State's power to create irrevocable contract rights in the first place, rather than an inquiry into the purpose or reasonableness of the subsequent impairment. In short, the Contract Clause does not require a State to adhere to a contract that surrenders an essential attribute of its sovereignty." 431 U.S. at 23.

As Justice Holmes explained almost 100 years ago, "[o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about

them." *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357, 52 L. Ed. 828, 28 S. Ct. 529 (1908).

The Supreme Court has long held that the states' power of eminent domain is one of the "essential attribute[s] of sovereignty" that is not subject to the limitations of the Contract Clause. The Court explained at length in *West River Bridge Co. v. Dix*, 47 U.S. (6 How.) 507, 531-32, 12 L. Ed. 535 (1848):

"No State, it is declared, shall pass a law impairing the obligation of contracts; yet, with this concession constantly yielded, it cannot be justly disputed, that in every political sovereign community there inheres necessarily the right and the duty of guarding its own existence, and of protecting and promoting the interests and welfare of the community at large. This power and this duty are to be exerted not only in the highest acts of sovereignty, and in the external relations of governments; they reach and comprehend likewise the interior polity and relations of social life, which should be regulated with reference to the advantage of the whole society. This power, denominated *eminent domain* of the State, is, as its name imports, paramount to all private rights vested under the government, and these last are, by necessary implication, held in subordination to this power, and must yield in every instance to its proper exercise."

The Court later continued:

"[I]nto all contracts, whether made between States and individuals or between individuals only, there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the preexisting and higher authority of the laws of nature, of nations, or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, wherever a necessity for their execution shall occur. Such a condition is the right of eminent domain." 47 U.S. at 532-33.

This application of the reserved powers doctrine has been consistently upheld by the Court's more recent decisions. See *United States v. Winstar Corp.*, 518 U.S. 839, 874, 135 L. Ed. 2d 964, 116 S. Ct. 2432 (1996); *U.S. Trust Co. of New York*, 431 U.S. at 24; *Contributors to the Pennsylvania Hospital v. City of Philadelphia*, 245 U.S. 20, 23-24, 62 L. Ed. 124, 38 S. Ct. 35 (1917).

This court has similarly held that "[t]he power of eminent domain is an inherent power which is vested exclusively in the sovereign—the State of Kansas." *Concerned Citizens, United, Inc. v.*

*Kansas Power & Light Co.*, 215 Kan. 218, 226, 523 P.2d 755 (1974). We have explained that "[i]mplicit in, and as an integral part of, that power is the authority in the sovereign, acting through the legislature, to delegate the power of eminent domain. Such power may be delegated by the legislature to any public authority to be exercised as directed." 215 Kan. 218, Syl. ¶ 2; see also *Strain v. Cities Service Gas Co.*, 148 Kan. 393, 395, 83 P.2d 124 (1938) ("The power of eminent domain can only be exercised by virtue of a legislative enactment. The right to appropriate private property to public use lies dormant in the state until legislative action is had, pointing out the occasions, modes, conditions and agencies for its appropriation. [1 Lewis, Eminent Domain, 3rd ed., § 367]").

Although K.S.A. 72-8212a was not enacted until 1982, the State possessed the power of eminent domain long before that time— and long before the 1947 deed was signed by the parties' predecessors. The school district's predecessor, as a State entity, could not enter into a contract that limited the State's exercise of that power, and as the Supreme Court explained in *West River Bridge Co.*, 47 U.S. at 532, any conditions described in that contract were subject to the State's exercise of that power. For this reason, K.S.A. 72-8212a, in which the State delegates its eminent domain power to school districts, is not an unconstitutional impairment of contract rights. Thus, contrary to the district court's conclusion below, we conclude that the provisions of K.S.A. 72-8212a do not violate the Contract Clause of the United States Constitution.

## *Permitting a Taking "For Any Purpose Whatsoever"*

The second argument Young advances for upholding the decision of the district court is that the provisions of K.S.A. 72-8212a are overbroad and unconstitutional, in that the statute permits a school district to condemn property "for any purpose whatsoever." K.S.A. 72-8212a provides:

"(a) A unified school district may acquire by condemnation, for school purposes, any interest in real property, including fee simple title. If, within 10 years after entry of final judgment under K.S.A. 26-511, the school district fails to construct substantial buildings or improvements that are used for school purposes on any real property acquired under this subsection, the school district shall notify the original owners or their heirs or assigns that they have an option to purchase the

property from the school district for an amount equal to the compensation awarded for the property under the eminent domain procedures act. Such option shall expire if not exercised within a period of six months after the date of the expiration of the ten-year period.

"(b) A unified school district may acquire by condemnation, *for any purpose whatsoever*, any reversionary interest held by others in real property which the school district has previously acquired by condemnation, deed or contract if:

(1) The district, or its predecessor districts, has constructed substantial improvements on the property; and

(2) the school district, or its predecessor districts, has held an interest in the property for at least 20 years.

"(c) When the board of education of a unified school district considers it necessary to condemn a property interest pursuant to this section, the board shall declare the necessity by resolution and shall authorize a competent engineer to make a survey and description of the property and the interest to be condemned and to file them with the clerk of the board. The resolution shall be published once in a newspaper having general circulation in the school district. Upon the filing of the survey and description, the board of education shall provide by resolution for the acquisition of the property interest by condemnation. The resolution shall set forth a description of the property, the interest to be condemned and the purpose for which the property is and will be used. The board of education, as soon as practicable after the passage of the resolution, shall proceed to exercise the power of eminent domain in the manner provided by article 5 of chapter 26 of the Kansas Statutes Annotated." (Emphasis added.)

Young contends that by authorizing school districts to condemn reversionary interests "for any purpose whatsoever," K.S.A. 72-8212a(b) violates the Fifth and Fourteenth Amendments of the United States Constitution. The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation."

We examined this provision in *State ex rel. v. Urban Renewal Agency of Kansas City*, 179 Kan. 435, 438, 296 P.2d 656 (1956), where we explained:

"It is elementary that the legislature possesses no power to authorize the appropriation of one's property for a private use or purpose, but it is equally well-settled that the right to take private property for a public use is inherent in the state, and that the legislature may authorize the acquisition and appropriation of private property for a public use provided the owner is compensated therefor. [Citation omitted.] The difficulty often encountered lies in the inability of courts comprehensively to define the concept of a public use or purpose, due, no doubt,

to the exigencies shown by the facts and the diversity of local conditions and circumstances in an everchanging world."

The *Urban Renewal* court further stated that "the concept of the terms public purpose, public use, and public welfare, as applied to matters of this kind, must be broad and inclusive." 179 Kan. at 438; see also *Kelo v. City of New London, Conn.*, 545 U.S. 469, 480, 162 L. Ed. 2d 439, 125 S. Ct. 2655 (2005) (examining the meaning of "public purpose" in light of the Takings Clause and stating that "[w]ithout exception, our cases have defined that concept broadly, reflecting our longstanding policy of deference to legislative judgments in this field").

Young is correct that the plain language of K.S.A. 72-8212a(b) would permit a school district to acquire by condemnation, "for any purpose whatsoever," any reversionary interest held by others in real property which the school district has previously acquired by condemnation, deed, or contract. If we were to limit our consideration to the above language without any consideration of the statute as a whole, we would agree with Young's position. We note, however, that the provisions of subsection (b) provide for the taking of the reversionary interest *"if* (1) [t]he district, or its predecessor districts, has constructed substantial improvements on the property; and (2) the school district, or its predecessor districts, has held an interest in the property for at least 20 years." (Emphasis added.) K.S.A. 72-8212a(b).

These two provisos are extremely important in our determination of the meaning of the phrase "for any reasons whatsoever" as it relates to the class of takings authorized by K.S.A. 72-8212a(b). The taking of a reversionary interest is only permitted if a school district has constructed substantial improvements on the property and has held an interest in the property for at least 20 years. The construction of substantial improvements represents a public investment in the property itself by the school district. Holding the property for at least 20 years also represents a substantial investment over time by the school district. We find that the provisos are equivalent to the creation of a "public interest" in the property itself by reason of the public's investment in the property.

Moreover, the conditional language in K.S.A. 77-8212a(b), which authorizes a taking by a school district *if* it complies with the two provisos listed in that subsection, indicates that the legislature has determined that when such requirements have been met, any private reversionary interest in the real property must yield to the powers of eminent domain in order to serve the public interest by retaining the public investment in the property. The two provisos therefore identify the public purpose underlying the taking of the reversionary interest "for any purpose whatsoever." Once substantial improvements have been made on property with public funds and once a school district has held property for at least 20 years, our legislature established that a taking of the reversionary interest "for any purpose whatsoever" is actually a taking for a public purpose—if for no other reason than to preserve the investment of public funds in the property.

A consideration of the statute as a whole confirms the above interpretation. "[W]here a statute is susceptible of more than one construction, it must be given that construction which, when considered in its entirety, gives expression to its intent and purposes, even though such construction is not within the strict literal interpretation of the statute. [Citations omitted.]" *Jackson v. City of Kansas City*, 235 Kan. 278, 318, 680 P.2d 877 (1984). For this reason, courts consider statutes *in pari materia* "to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *Oshman Sporting Goods Co. Kansas*, 275 Kan. at 768. Similarly, under the maxim *noscitur a sociis*, literally " 'it is known from its associates,' " the meaning of a word of phrase which may be obscure or doubtful when considered in isolation may be clarified or ascertained by reference to those words or phrases with which it is associated. In other words, the maxim recognizes that, taken in context, a word may have a broader or narrower meaning than it might have if used alone. *Jones v. Kansas State University*, 279 Kan. 128, 150, 106 P.3d 10 (2005).

When K.S.A. 72-8212a(b) is read in conjunction with K.S.A. 72-8212a(a) and (c), the legislature's intent regarding the "for any purpose whatsoever" phrase becomes more clear. Subsection (a) allows a school district to acquire by eminent domain "any interest

in real property, including fee simple title" in such property if the condemnation is "for school purposes." If within 10 years from final judgment the school district fails to construct substantial buildings or improvements that are used for school purposes, K.S.A. 72-8212a(a) allows the original property owner a method of reacquiring the property. It is clear from the language of the statute that subsection (a) contemplates cases where a school district must initially establish a public purpose for a proposed taking because no public purpose preexists.

As we have discussed previously, however, subsection (b) contemplates cases where the public purpose has already been established, in that a "school district has previously acquired [the subject property] by condemnation, deed or contract," and the school district "has constructed substantial improvements on the property" and "has held an interest in the property for at least 20 years." Under such circumstances, where the public investment in the property predominates, the school district may acquire the reversionary interest of another by condemnation "for any purpose whatsoever." K.S.A. 72-8212a(b). The legislature deemed it an appropriate public purpose for a school district to protect its investment of public funds in the subject property against reversion of the property to persons having no investment in the property other than a reversionary interest.

We conclude that neither of these subsections permits an arbitrary taking through eminent domain without the existence and support of a public purpose. K.S.A. 72-8212a(c), which provides the procedure school districts must follow when condemning property pursuant to subsection (a) or (b), lends credence to our conclusion. Subsection (c) states that "[w]hen the board of education of a unified school district considers it necessary to condemn a property interest pursuant to this section, the board shall declare the necessity by resolution." K.S.A. 72-8212a(c). Subsection (c) further provides that "[t]he resolution shall set forth a description of the property, the interest to be condemned and *the purpose for which the property is and will be used.*" (Emphasis added.) Clearly, K.S.A. 72-8212a(b) does not authorize a blanket and arbitrary authority for school districts to condemn property for whatever rea-

son they choose, because school districts proceeding under that subsection are still required to articulate the reasons for the taking in the board's resolution pursuant to K.S.A. 77-8212a(c).

Even more importantly, condemnation of any interest in property in Kansas must be accomplished by following the law enacted by the legislature. K.S.A. 77-8212a(c) mandates that the "board of education . . . shall proceed to exercise the power of eminent domain [described in subsections (a) and (b)] *in the manner provided by article 5 of chapter 26 and the Kansas Statutes Annotated.*" (Emphasis added.) This language specifically requires any exercise of eminent domain pursuant to K.S.A. 72-8212a to be done in the manner provided by the Eminent Domain Procedures Act (EDPA), K.S.A. 26-501 *et seq.* Accord *Concerned Citizens*, 215 Kan. at 226 (The "delegation of power" in eminent domain statutes "is limited . . . in the manner in which [the designated authority] is to exercise the power. The statute provides that [the designated authority] is to exercise its power of eminent domain in the manner set forth in K.S.A. 26-501 to 26-516."). "The adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length. [Citations omitted.]" *Johnson v. Killion*, 178 Kan. 154, 158, 283 P.2d 433 (1955).

K.S.A. 26-504 states that in any action for eminent domain initiated by the State or an authorized state agency, the district court is required to make two findings: "(1) The plaintiff has the power of eminent domain; and (2) the taking is necessary to the lawful corporate purposes of the plaintiff." In other words, the legislature has determined that the district court is required to make a finding that any action for eminent domain is for a public purpose before it may proceed in condemning the property in question. See *Concerned Citizens*, 215 Kan. at 227-28 ("the determination that the taking is necessary to the lawful corporate purposes of the plaintiff is made by the district court from the allegations of the petition itself").

When reviewing certain provisions or amendments to a statute,

"[i]t is presumed the legislature had and acted with full knowledge and information as to the subject matter of the statute, as to prior and existing law and legislation on the subject of the statute and as to the judicial decisions with respect

to such prior and existing law and legislation. [Citations omitted.]" *Rogers v. Shanahan*, 221 Kan. 221, 225-26, 565 P.2d 1384 (1976).

In this case, it is unclear whether the district court in the original eminent domain proceeding initiated by the school district ever had the chance to make such findings required under K.S.A. 26-504, because the current action enjoined the original condemnation action from continuing. Nevertheless, had the eminent domain proceeding continued under the EDPA, the district court would have been required to make such a finding before the fee title to the subject property could be vested in the school district.

In delegating its power of eminent domain to the school district, the legislature carefully incorporated protections against arbitrary condemnation of private property by requiring in every case that any such action be supported by a public purpose. That "public purpose" is expressed in K.S.A. 72-8212a(a) as the requirement that the taking be "for school purposes." In K.S.A. 72-8212a(b), the legislature allowed for a condemnation of a reversionary interest as long as the requirements of that subsection relating to the improvements and duration of ownership were fulfilled. Yet even while the public purpose to be served by a condemnation action under K.S.A. 72-8212a is inherent in the language of the statute, the legislature has provided two additional safeguards against arbitrary takings—under K.S.A. 72-8212(c), a resolution by the Board of Education stating the purpose of the taking and, under K.S.A. 26-504, a district court's finding that the taking is lawful.

A similar argument to that raised by Young was rejected by the Seventh Circuit in *Daniels v. Area Plan Com'n of Allen County*, 306 F.3d 445, 467-68 (7th Cir. 2002), where the court explained:

"The Daniels argue that Indiana Code § 36-7-3-11 is facially invalid because it does not define what constitutes a public purpose. However, neither the Supreme Court nor this court has ever required a specific legislative statement as to the limits of a public purpose to avoid a Fifth Amendment facial challenge. It is true that in determining if the state action satisfies the Fifth Amendment's Public Use Clause the Supreme Court has relied primarily, if not exclusively, upon legislative determinations of public purposes within the taking statute. [Citation omitted.] However, the Court has never held that the sole source of a definable public use is the specific takings-enabling statute. Indeed because the power of eminent domain is coterminous with the police power, as long as a taking is substantially

related to the advancement of the health, safety and welfare of the public it is constitutionally sound under the Public Use Clause. [Citation omitted.]

"Also, the United States Constitution does not prescribe any particular allocation or separation of powers among the states. [Citation omitted.] Thus, at least for Fifth Amendment purposes, the Indiana legislature was free to delegate the authority to determine public purpose to another branch or unit of the government. [Citations omitted.] The legislature did in fact delegate this authority when it authorized the Plan Commission to determine whether to vacate plans for a public purpose.

". . . In any event, while § 36-7-3-11 does not specifically define a public use, it clearly requires that a public use exist so as to justify a plan commission's action."

As did the Indiana Legislature in *Daniels*, the Kansas Legislature has specifically delegated the determination of whether a valid public use exists to the district court in an eminent domain action. Because K.S.A. 72-8212a incorporates the provisions of the EDPA, including the requirement that the district court make a finding that the taking is for a public use, it does not violate the Fifth or Fourteenth Amendments.

### *Existence of a Public Purpose in this Case*

Young argues that even if K.S.A. 72-8212a(b) is constitutional, the school district failed to establish in this case that its condemnation of Young's reversionary interest was for a public purpose. Our discussion above addresses this argument. The "public purpose" is established under K.S.A. 72-8212a(b) once the school district satisfies the two specific requirements under subsection (b). Moreover, because this is an inverse condemnation action for an injunction to halt the eminent domain proceedings initiated by the school district, Young bears the burden of establishing that the school district has not met the requirements of subsection (b). See *Board of Leavenworth County Comm'rs v. Whitson*, 281 Kan. 678, 683-84, 132 P.3d 920 (2006); *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 380, 22 P.3d 124 (2001). Young has failed to meet this burden. Rather, as the district court concluded in this case based upon the stipulated facts of the parties, there is "no factual basis for this Court to determine that there is no valid public purpose accomplished" by the school district's taking of the reversionary interest.

As the Supreme Court stated in *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 241, 81 L. Ed. 2d 186, 104 S. Ct. 2321 (1984), when a state's exercise of eminent domain is "rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause."

*Conclusion*

The case we now consider is one contemplated by our legislature in K.S.A. 72-8212a(b). The school district acquired the property in 1947 subject to a reversionary interest. The school district has used and maintained the property for over 50 years. During those years the school district has constructed substantial improvements on the property. As indicated in the facts of the case, a school building was constructed in 1947, a gymnasium with additional classroom space was added in 1957, and a house and garage were built after the construction of the gymnasium. Recently, the property was appraised at $500 per acre, but the improvements on the property were valued at over $100,000. Under such circumstances, our legislature has deemed that it is in the public interest for the school district to protect its public investment against a reversionary interest by authorizing condemnation of the reversionary interest. The requirement that a taking be made for a "public purpose" is fulfilled by the two conditions set forth in K.S.A. 72-8212a(b).

We conclude that the provisions of K.S.A. 72-8212a are not unconstitutional and that a public purpose exists for the condemnation action filed by the school district in this case. We therefore reverse the decision of the district court enjoining the school district's original eminent domain action.

Reversed.