No. 98,111

FRANCIS P. DENNING, *Appellant*, v. KANSAS PUBLIC EMPLOYEES
RETIREMENT SYSTEM, *Appellee*.

(180 P.3d 564)

Opinion filed March 28, 2008.

*Robin A. Lewis*, of Olathe, argued the cause and was on the brief for appellant.

*William Scott Hesse*, assistant attorney general, argued the cause, and *Paul J. Morrison*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

BEIER, J.: Plaintiff Francis P. Denning brings this appeal to challenge K.S.A. 2007 Supp. 74-4957(5)'s annual earnings cap limiting the amount of retirement he may draw under the Kansas Police and Firemen's Retirement System (KP&F).

Denning began his law enforcement career in 1978, when he went to work for the Johnson County Sheriff's Department. During this employment, Denning participated in KP&F.

Between 1996 and 2002, Denning worked as the Chief of Police of Roeland Park. In 2001, Roeland Park switched from the Kansas Public Employees Retirement System (KPERS) to KP&F, and Denning's participation switched as well.

On August 8, 2002, Denning left Roeland Park to become the Undersheriff for Johnson County, where he continued to partici-pate in the KP&F system. When he retired from that position on May 1, 2003, Denning began drawing his KP&F retirement ben-efits.

Denning was later elected Sheriff of Johnson County and was sworn in on January 10, 2005. Because of 74-4957(5)'s annual earn-ings cap, administrators of the Kansas Public Employees Retire-ment System (KPERS), which oversees KP&F, suspended his re-tirement payments. Denning reached the earnings cap in February 2005. That decision was eventually upheld by the KPERS Board and the district court.

K.S.A. 2007 Supp. 74-4957(5) reads in pertinent part:

> "If a retirant who retired on or after July 1, 1994, is employed, elected or appointed in or to any position or office for which compensation for service is paid in an amount equal to $15,000 or more in any one such calendar year, by the same state agency or the same police or fire department of any county, city, township or special district or the same sheriff's office of a county during the final two years of such retirant's participation, such retirant shall not receive any re-tirement benefit for any month for which such retirant serves in such position or office. . . . Any retirant employed by a participating employer in the Kansas police and firemen's retirement system shall not make contributions nor receive additional credit under such system for such service except as provided by this section."

For a portion of the time Denning worked for the Johnson County Sheriff's Department from 1978 to 1996, the statute per-mitted a retirant who returned to work to elect to revoke retire-ment and become an active KP&F participant again, meaning he or she could contribute a portion of earnings and earn service credit. That option was added in 1987 and removed in 1994. Also in 1994, the legislature replaced what had been a 30-day limit on collection of retirement benefits after a retirant's return to work with the annual earnings cap at issue here. The amount of that cap

has increased over time to the $15,000 the statute contained when this dispute arose.

Denning asserts on this appeal that the word "during" in the statute should be interpreted to mean that its earnings cap applies only if a retirant goes back to work for the same employer for which he or she worked *throughout* the 2 years before retirement; it is not enough if the retirant returns to work for an employer for which he or she worked *at any point* in the 2 years. This is a distinction with a difference for Denning because he worked only 9 months for the Johnson County Sheriff's Department in the 2 years immediately before his retirement.

Denning also asserts on this appeal that the statute, if not interpreted in the fashion he suggests, is unconstitutionally void for vagueness, violates the federal Contract Clause of Article 1, § 10 of the United States Constitution, and runs afoul of equal protection.

*Interpretation of K.S.A. 2007 Supp. 74-4957(5)*

Although this court has previously stated that "interpretation of a statute is a necessary and inherent function of an agency in its administration or application of that statute" and that "the legal interpretation of a statute by an administrative agency that is charged by the legislature with the authority to enforce the statute is entitled to great judicial deference," *Mitchell v. Liberty Mut. Ins. Co.*, 271 Kan. 684, Syl. ¶ 4, 24 P.3d 711 (2001), we have recently been reluctant to apply the doctrine of operative construction when faced with questions of law on undisputed facts. See *Fieser v. Kansas Bd. of Healing Arts*, 281 Kan. 268, 270-71, 130 P.3d 555 (2006). An agency's interpretation of a statute is not conclusive; final construction of a statute always rests within the courts. *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007); *Fieser*, 281 Kan. at 270; *Foos v. Terminix*, 277 Kan. 687, 692-93, 89 P.3d 546 (2004).

Denning's first argument on appeal, that the Board and the district court erred in interpreting K.S.A. 2007 Supp. 74-4957(5), raises a pure question of statutory interpretation, over which this

court's review is unlimited. See *Johnson v. KPERS*, 262 Kan. 185, 188, 935 P.2d 1049 (1997).

When a statute is plain and unambiguous, the court must give effect to its express language, rather than determine what the law should or should not be. This court will not speculate on legislative intent and will not read the statute to add something not readily found in it. If the statute's language is clear, there is no need to resort to statutory construction. *Graham*, 284 Kan. at 554; *Steffes v. City of Lawrence*, 284 Kan. 380, 386, 160 P.3d 843 (2007).

Denning asserts that his choice of meaning for "during" is the "primary" definition, citing three dictionaries. In response, KPERS cites two dictionaries.

We acknowledge that the word "during," viewed in isolation, has more than one common and ordinary meaning. The competing dictionaries and their definitional hierarchies demonstrate this fact. However, when considered as part of the broader text of the statutory subsection, "during" is not ambiguous. Rather, the legislative intent behind its use is plain. Double-dipping of publicly supported salary and pension is to be limited. A KP&F retirant who returns to work for any employer that paid his or her wages at any point in the 2 years preceding retirement is subject to the earnings cap.

*Vagueness*

We understand Denning's first constitutional argument to assert that the statute should be struck down as void for vagueness.

" 'The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt.' [Citation omitted.]" *State v. Rupnick*, 280 Kan. 720, 736, 125 P.3d 541 (2005) (quoting *State v. Armstrong*, 276 Kan. 819, 821, 80 P.3d 378 [2003]).

The issue of whether a statute is constitutional is one of law. Our scope of review on issues of law is unlimited. *In re Tax Appeal of CIG Field Services Co.*, 279 Kan. 857, 866-67, 112 P.3d 138 (2005).

Denning's vagueness challenge is without merit. If we cannot conclude that the word "during" or the statutory subsection in which it appears is ambiguous, we certainly cannot conclude that either is unconstitutionally vague. We also note that our previous cases analyzing vagueness questions have focused on criminal and regulatory statutes. See, *e.g.*, *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 834 P.2d 368 (1992) (relying on *Guardian Title Co. v. Bell*, 248 Kan. 146, 805 P.2d 33 [1991]; discussing existence of two vagueness analyses, criminal and "business"; statutes regulating business afforded greater leeway). K.S.A. 2007 Supp. 74-4957(5) is not a criminal statute. And it is doubtful it could qualify as a regulatory statute governing Denning in the conduct of his "business." Even if we could say it did, it comfortably comports with the forgiving "business" vagueness measure, *i.e.*, a "common-sense determination of fairness . . . [*i.e.*, whether] an ordinary person exercising common sense [could] understand and comply with the statute." *Boatright*, 251 Kan. at 243.

### Contract Clause

Denning's second constitutional argument is based on the federal Contract Clause and focuses on the 1994 amendments to 74-4957, which did away with a KP&F retirant's option upon reemployment to revoke retirement and return to active participant status, and which replaced a 30-day limitation on earnings with a dollar limitation.

The federal Contract Clause, Article I, § 10 of the United States Constitution, guarantees that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."; see *Young Partners v. U.S.D. No. 214*, 284 Kan. 397, 403, 160 P.3d 830 (2007). State retirement systems create contracts between the State and its employees who are members of the system. *Brazelton v. Kansas Public Employees Retirement System*, 227 Kan. 443, Syl. ¶¶ 1, 2, 3, 607 P.2d 510 (1980); see *Singer v. City of Topeka*, 227 Kan. 356, 365-66, 607 P.2d 467 (1980). A unilateral, retroactive, substantial change in retirement benefits by a governmental employer to the disadvantage or detriment of employees violates the Contract Clause. *Brazelton*, 227 Kan. 443, Syl. ¶ 5.

We have held that the test for determining whether a state law violates the Contract Clause is whether: " '(1) The state law has, in fact, operated as a substantial impairment of a contractual relationship; (2) whether there is a significant and legitimate public purpose behind the legislation; and (3) whether the adjustment of the contracting parties' rights and responsibilities is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.' " *U.S.D. No. 443 v. Kansas State Board of Education*, 266 Kan. 75, 84, 966 P.2d 68 (1998); *Federal Land Bank of Wichita v. Bott*, 240 Kan. at 624, Syl. ¶ 4, 732 P.2d 710 (1987). Specifically, " '[t]o be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.' " *Brazelton*, 227 Kan. at 453 (quoting *Betts v. Board of Administration*, 21 Cal. 3d 859, 863, 148 Cal. Rptr. 158, 582 P.2d 614 [1978]). We have said that this test applies regardless of the magnitude or degree of impairment to a plaintiff employee. 227 Kan. at 450.

In argument before this court, Denning conceded that the 1994 replacement of a time limitation with an earnings limitation constituted an exchange with offsetting benefits and detriments for employees. However, he insisted that the portion of the 1994 amendment that did away with a retirant's ability to revoke retirement and return to participation lacked a required corresponding advantage under Contract Clause analysis.

We are unpersuaded by Denning's Contract Clause argument for three reasons.

First, we believe the changes wrought by the 1994 amendment must be viewed as a whole rather than parsed and paired. Our examination of whether the Contract Clause has been violated by pension system changes cannot be reduced to mere counting and matching of arguably beneficial and detrimental provisions. As KPERS argued before us, the 1994 amendments must be viewed as a whole. When viewed in such a context, the 1994 deletion of the revocation option was not uncompensated. The replacement of the

30-day limitation with a dollar limitation not only resulted in a direct offset, one for the other; it also increased the annual total of KP&F retirement that the majority of retirants returning to work would draw. Most are not paid so handsomely as Denning, and the dollar limit meant their retirement payments would continue for much longer than 30 days after they began work each year. This is part of the balance that must be considered when the 1994 amendments are measured against the requirements of the Contract Clause.

Second, our precedent has recognized that there may be times when pension system changes are necessary for the greater good, even if an individual employee or retirant may suffer some marginal disadvantage. Changes may be made, for example, "to protect the financial integrity of the system or for some other compelling·reason." *Brazelton*, 227 Kan. at 453. Changes may be "necessary to preserve or protect the pension system; to maintain flexibility; to permit necessary adjustments due to changing conditions; to protect the beneficial purpose of the system; to maintain the system on a sound actuarial basis or by reason of administrative necessity." 227 Kan. at 454. This is in keeping with our view that the Contract Clause must be considered in conjunction with the reserved power of the State to protect the vital interests of its citizens. *Federal Land Bank of Wichita v. Bott*, 240 Kan. at 632; see also *Young Partners*, 284 Kan. at 403 (" '[f]reedom of contract . . . implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community' " [quoting *Kansas City Power & Light Co. v. Kansas Corporation Comm'n*, 238 Kan. 842, 853, 715 P.2d 19 (1986)]).

Third, and finally, Denning's argument is mortally weakened because the versions of the statute in effect when he first became a participant in the KP&F system in 1978 and when he reentered the system in 2001 did not give reemployed retirants the option of revoking retirement and continuing to contribute and earn service credit. See L. 1973, ch. 327, sec. 1; L. 2001, ch. 209, sec. 29. This option was added in 1987, L. 1987, ch. 299, sec. 27, and remained in effect only until enactment of the 1994 amendment, L. 1994, ch. 293, sec. 21. In other words, the benefit Denning complains

about losing was not one he enjoyed when he entered the KP&F system in 1978, reentered in 2001, or upon his retirement. Even if we adopt a micro rather than a macro view of the facts before us, it does not appear that the statutory retirement revocation option was a part of the consideration for Denning's acceptance or continuation of public employment. See *Brazelton*, 227 Kan. at 449.

*Equal Protection*

Equal protection analysis also does not lead us to strike K.S.A. 2007 Supp. 74-4957(5). Denning argues that if he were covered by KPERS rather than KP&F, he would not be subject to the earnings cap because of his elected status. He is mistaken.

The relevant KPERS provision is K.S.A. 2007 Supp. 74-4914(5). It specifically applies an earnings cap to a retirant who returns to work after being elected to his or her position, as long as the term of the elected official began July 1, 2000, or after. Thus, although in theory there may exist some KP&F-covered elected official who returned to work after retirement and whose term began before July 1, 2000, who could pursue the equal protection challenge Denning attempts here, Denning is not that person.

For all of the foregoing reasons, the district court is affirmed.