NOT DESIGNATED FOR PUBLICATION

No. 114,254

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID WARRENDER,
*Appellee*,

v.

VIA CHRISTI HOSPITALS WICHITA, SECURITY INS. CO. OF HARTFORD, and
FIRE & CASUALTY CO. OF CONNECTICUT,
*Appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed February 12, 2016. Affirmed.

*Joseph C. McMillan*, of Mullins & McMillan, P.A., of Overland Park, for appellants.

*Jonathan E. Voegeli*, of Law Offices of Slape & Howard, Chtd., of Wichita, for appellee.

Before MALONE, C.J., PIERRON, J., and WALKER, S.J.

*Per Curiam*:  Via Christi Hospital (Via Christi) and its workers compensation insurance carriers bring this appeal from the decision of the Workers Compensation Board (Board) denying their request that David Warrender be compelled to change his Board-approved treating physician. We find that the Board has properly applied the law to the facts in this case and therefore affirm the Board's decision.

FACTS

The parties do not dispute the underlying facts in this case. In 1999, while employed by Via Christi, Warrender was injured when a forklift drove across his right

1

foot. Following his injury, Warrender suffered from bilateral foot, leg, and hip pain and saw various physicians who treated him with spinal stimulation, nerve blocks, and spinal epidural injections, none of which provided significant relief. In 2004, Warrender began seeing Dr. Diana Ketterman; since then, she has been prescribing him a drug regimen to help manage his pain.

In March 2010, the administrative law judge (ALJ) approved the parties' settlement agreement. At the settlement hearing, the ALJ considered an independent medical evaluation completed by Dr. Sandra Barrett. Dr. Barrett stated that Dr. Ketterman's treatment of Warrender was reasonable, given the failure of other attempts to manage his pain. Dr. Barrett specifically wrote:

> "There is not a fixed drug regimen that is indicated or has been proven to work with reflex sympathetic dystrophy. This is trial and error, using various medications until one gets the combination that works, and has as less [*sic*] side effects as possible. Unfortunately, this young man has a very complicated course in terms of tolerance to medication. Therefore, with the current combination and after looking at what has been tried, this is appropriate."

The settlement specifically left future medical benefits open and designated Dr. Ketterman as Warrender's authorized treating physician. The settlement also provided for Warrender to receive a lump-sum payment of the rest of the amount allowed for permanent total disability.

In January 2013, Via Christi obtained an independent medical evaluation from Dr. Jeanette Salone. Dr. Salone diagnosed Warrender with complex regional pain syndrome in both lower extremities, but she recommended that Warrender reduce his morphine dosage and be weaned off of certain medications because she suspected he suffered from sleep apnea. She suggested a sleep study, alternative therapies such as hypnosis and

2

acupuncture, and referral to a pain center. She believed a multidisciplinary approach would be best to reduce Warrender's overall medication usage.

Via Christi sent Dr. Salone's report to Dr. Ketterman; and while Dr. Ketterman acknowledged the issues that Dr. Salone raised, she believed that Warrender had been stable on his medications for a number of years. She did discontinue the medications that could have caused complications with Warrender's possible sleep apnea but otherwise left Warrender's drug regimen alone.

Via Christi then referred Warrender to Dr. Shawn Smith in Oklahoma City, Oklahoma. Dr. Smith did not diagnose Warrender with complex regional pain syndrome and noted that Warrender did not have adequate pain control despite the many prescription drugs he was taking. Dr. Smith recommended weaning Warrender off his medications in a hospital setting in order to determine the appropriate dosages necessary to manage the pain.

Finally, Via Christi referred Warrender to Dr. Aly Gadalla of Wichita, who was willing to take over Warrender's care. Dr. Gadalla diagnosed Warrender with chronic pain syndrome, noted that Warrender did not have adequate pain relief despite taking 1400 mg of morphine per day (the standard recommended dose is 120 mg), and recommended reducing Warrender's medication dosages in an outpatient setting. Dr. Gadalla expressed concern that Warrender's high medication dosages placed him at risk of respiratory compromise and sudden death.

Warrender refused to switch physicians from Dr. Ketterman to Dr. Gadalla, so Via Christi requested a postaward medical hearing, which took place in April 2015. At the hearing, the ALJ considered Warrender's medical records from Dr. Ketterman and the independent medical evaluations from Drs. Salone, Gadalla, and Smith. Warrender appeared without an attorney but told the ALJ:

3

"I would like to keep the doctor that I have now that has been caring for me for the last 14 years. I just don't see the need to change physicians, she has been doing a fine job, she is a medical doctor . . . . I just really like her, she cares about my well-being."

Via Christi's counsel stated, "[I]t's not [our] position that we are denying any treatment; we are trying to provide him, in light of three physicians who have indicated they believe he's being over-medicated, to get him proper treatment." The ALJ ruled for Warrender and found that Dr. Ketterman should continue as the authorized treating physician. Via Christi appealed to the Board, which affirmed. Via Christi now appeals to this court.

ANALYSIS

Via Christi argues that the Board incorrectly interpreted and applied the law when it found that Dr. Ketterman should continue as Warrender's authorized treating physician.

This court reviews final orders of the Board under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq*. The standard of review under the Act depends on the issue raised. See K.S.A. 2015 Supp. 77-621. When, as here, someone challenges the Board's decision as an incorrect application of the law, this court has unlimited review. K.S.A. 2015 Supp. 77-621(c)(4); *Craig v. Val Energy, Inc.*, 47 Kan. App. 2d 164, 166, 274 P.3d 650 (2012), *rev. denied* 291 Kan. 1244 (2013). This court also has unlimited review over the interpretation of statutes and will not defer to the interpretation of the ALJ or the Board. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 457, 228 P.3d 403 (2010); *Denning v. KPERS*, 285 Kan. 1045, 1048, 180 P.3d 564 (2008).

When interpreting statutes, the court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). When a statute is unambiguous, the court will not read into the statute something not readily found there and will not resort to canons of statutory construction. *Bergstrom v. Spears*

4

*Manufacturing Co.*, 289 Kan. 605, 607-08, 214 P.3d 676 (2009). These general rules apply to the interpretation of workers compensation statutes: "[T]he court must give effect to the legislative intention as expressed in the statutory language." 289 Kan. at 607.

K.S.A. 2015 Supp. 44-510h(a) states that Via Christi has to provide Warrender with medical services "as may be *reasonably* necessary to cure and relieve [him] from the effects of the injury." (Emphasis added.) Because the employer has to provide medical services to the injured employee, the employer usually has the right to direct those medical services, including choosing the employee's physician. Kansas Workers' Compensation Practice Manual 8-3 (5th ed. 2015). Here, however, the authorized treating physician, Dr. Ketterman, was specifically designated as part of the parties' settlement.

Seeking to change Warrender's physician, Via Christi moved for a postaward medical hearing under K.S.A. 2015 Supp. 44-510k, which states that the ALJ can modify an award of current or future medical care if he or she finds that the care requested "is not necessary to cure or relieve the effects" of the injury. K.S.A. 2015 Supp. 44-510k(a)(2)(B). Under this statute, to modify Warrender's award of current and future medical care by changing his authorized treating physician, Via Christi must show that Dr. Ketterman's treatment is not necessary to cure or relieve the effects of Warrender's injury. K.S.A. 2015 Supp. 510k(a)(2)(B). Where the Board went wrong, Via Christi argues, is that it applied only the language in K.S.A. 44-510k(a)(2)(B) rather than also considering K.S.A. 2015 Supp. 44-510h(a), which adds the word "reasonably" before the phrase "necessary to cure or relieve." Compare K.S.A. 2015 Supp. 44-510k(a)(2) with K.S.A. 2015 Supp. 44-510h(a). We find this addition of the word "reasonably" does not create a meaningful difference in interpreting the statutes.

We need not decide whether Via Christi is correct that reasonableness should be read into K.S.A. 2015 Supp. 44-510k(a)(2) because even if it is Via Christi has still failed

5

to show that Dr. Ketterman's treatment of Warrender is not reasonably necessary to cure or relieve the effects of his injury.

The best that can be said about Via Christi's evidence is that it has demonstrated there is a difference of opinion among four physicians about how to best treat Warrender's injury. Drs. Salone, Smith, and Gadalla all recommended decreasing the dosages of certain medications and eliminating others, but none of these doctors stated that Warrender no longer needs medication to manage his pain or that Dr. Ketterman's care was not necessary to relieve the effects of Warrender's injury. Dr. Salone's primary concern was the interaction of certain medications with Warrender's undiagnosed sleep apnea, but it appears that Dr. Ketterman discontinued the medications causing this particular problem after she reviewed Dr. Salone's report. Dr. Gadalla wanted to reduce the dosages in an outpatient setting (as opposed to the inpatient setting recommended by Drs. Salone and Smith) but did not recommend taking Warrender off all medications. Dr. Smith commented that "one evaluation by myself will not dictate the perfect prescription for resolution of his symptoms. It is likely he will continue to experience some symptoms long-term no matter what medication he is on."

Unlike these three doctors, who each saw Warrender only once, Dr. Ketterman has been treating Warrender since at least 2004. She prescribes a drug regimen to help Warrender manage his pain. Warrender would prefer to remain with Dr. Ketterman, and Dr. Ketterman is willing to continue treating Warrender. Dr. Ketterman would keep Warrender on the same medication regimen because "at this point the medications are controlling his pain to the extent that Mr. Warrender functions on these medications and is able to complete his activities of daily living." The fact that other physicians would take somewhat different approaches based on a single evaluation of Warrender does not make Dr. Ketterman's approach unreasonable or unnecessary. All of the physicians would provide Warrender with medication, they would just do it in different ways.

6

Since this court lacks medical expertise, we need not decide which doctor would provide the very best course of treatment for Warrender. In the words of Dr. Ketterman, Warrender's chronic pain "is not a well understood entity however is something that will be present the rest of his life." Warrender and Via Christi have already agreed in their court-approved settlement that Dr. Ketterman would be the authorized treating physician. So while these four physicians disagree about how they would treat Warrender's injury, the only way for Via Christi to change Dr. Ketterman's designation now is to demonstrate that her treatment is not reasonably necessary to cure or relieve Warrender's injury. See K.S.A. 2015 Supp. 44-510k(a)(2); K.S.A. 2015 Supp. 44-510h(a). The Board determined Via Christi had not met its burden of doing so, and we agree.

Affirmed.